## BIGELOW v. CHATTERTON.

*(Circuit Court of Appeals, Eighth Circuit. August 9, 1892.)*

### No. 65.

1. FEDERAL COURTS—FORMS OF SUIT—RECOVERY OF UNOCCUPIED LANDS—BILL IN EQUITY.
   A suit brought in a federal court under Gen. St. Minn. 1878, c. 75, § 2, p. 814, to determine an adverse claim to unoccupied lands, should be by bill in equity, and the pleadings and practice should conform as nearly as may be to the pleadings and practice in equity in the federal courts.

2. EVIDENCE—JUDICIAL NOTICE—ENTRY OF PUBLIC LANDS.
   The court will take judicial notice of the fact that patents for public lands are frequently dated several years after the payment of the purchase money and the issuance of the certificate of entry, and therefore the production of a patent dated in 1888 is no proof that the patentee did not have an interest in the lands which was subject to attachment and judicial sale in 1885.

3. ATTACHMENT—PROOF OF PUBLICATION—DEFECTS.
   Under the Minnesota statute requiring that the summons in attachment shall be published "once in each week for six consecutive weeks," a proof of publication is defective when it merely states that the publication was made "for the period of seven successive weeks." *Godfrey* v. *Valentine*, 40 N. W. Rep. 163, 39 Minn. 337, followed.

4. SAME—CORRECTION OF DEFECTS AFTER TERM.
   Under Gen. St. Minn. 1878, c. 66, §§ 124, 125, a judge has authority, after the expiration of the term at which final judgment was entered, to make an order *nunc pro tunc*, allowing a party to correct a defect in the proof of publication of summons in attachment, by filing an affidavit showing the facts as to the publication.

5. SAME—EFFECT OF CORRECTION.
   Such correction does not operate to transfer the title to the land from the original owner to the purchaser at the attachment sale, for that transfer takes place at the date of the sheriff's deed, and the correction of the proof of publication merely preserves the evidence of that fact.

6. SAME—JURISDICTION—COLLATERAL ATTACK.
   The amended proof of publication in such case shows that the court had jurisdiction of the attachment proceeding, and hence its judgment is not open to collateral attack, and mere irregularities or errors in its proceedings are immaterial.

7. SAME—AFFIDAVIT.
   In Minnesota it is not necessary that an affidavit for attachment should state that defendant has property in the state subject to attachment, and fully describe the same. *Kenney* v. *Goergen*, 31 N. W. Rep. 210, 36 Minn. 190, followed.

8. SAME—NOTICE OF SALE.
   Under Gen. St. Minn. 1878, c. 66, § 318, the failure of the sheriff to give the requisite notice of a sale of lands on attachment does not affect the validity of the sale either as to third persons or parties to the action.

9. PARTIES—MISNOMER.
   Lee L. Bigelow signed a note by his initials, "L. L. Bigelow." Suit was brought thereon against him as L. L. Biglow, and his lands were sold in attachment proceedings, after publication of summons. *Held,* that the use of the initials and the difference in the spelling were mere irregularities, which did not affect the jurisdiction of the court; and the sale was not open to collateral attack.

Appeal from the Circuit Court of the United States for the District of Minnesota.

In Equity. Suit by Lee L. Bigelow against Jesse B. Chatterton to determine an adverse claim to land. Decree for defendant. Plaintiff appeals, and also brings error. Affirmed.

Statement by CALDWELL, Circuit Judge:

A statute of the state of Minnesota reads as follows:

"Sec. 2. *Action to Determine Adverse Claims.* An action may be brought by any person in possession, by himself or his tenant, of real property, against any person who claims an estate or interest therein, or lien upon the same, adverse to him, for the purpose of determining such adverse claim, estate, lien, or interest; and any person having or claiming title to vacant or unoccupied real estate may bring an action against any person claiming an estate or interest therein adverse to him, for the purpose of determining such adverse claim, and the rights of the parties, respectively." St. Minn. 1878, c. 75, § 2, p. 814.

This suit was brought in the circuit court of the United States for the district of Minnesota by the appellant, Lee L. Bigelow, under the last clause of the section of the statute above quoted, against the appellee, Jesse B. Chatterton, to determine the adverse claim of the latter to an undivided one half of the vacant and unoccupied town lots described in the bill, situated in the first and second divisions of Grand Rapids, in the county of Itasca, Minn. The court below decreed that the appellant was not, and that the appellee was, the owner of the property, and the complainant appealed.

*Walter H. Sanborn* and *W. C. Goforth,* for appellant.

*E. C. Chatfield,* for appellee.

Before CALDWELL, Circuit Judge, and SHIRAS, District Judge.

CALDWELL, Circuit Judge, (*after stating the facts.*) The case is brought here both by writ of error and on appeal, the plaintiff being in doubt whether this court would treat the proceeding as an action at law or a suit in equity. Whatever may be the practice in the state courts, where the distinction between law and equity, if not abolished, is not observed with any strictness, it would seem that in the courts of the United States, where that distinction is strictly maintained, a bill in equity would be the most appropriate form of proceeding when, as in this case, the land is vacant and unoccupied. Several cases founded on state statutes of the same general tenor as the Minnesota statute have been before the supreme court. The case of *Holland* v. *Challen,* 110 U. S. 15, 3 Sup. Ct. Rep. 495, was founded on a statute of Nebraska, and was begun by bill in equity. In that case the court said:

"There can be no controversy at law respecting the title to, or right of possession of, real property, when neither of the parties is in possession. An action at law, whether in the ancient form of ejectment or in the form now commonly used, will lie only against a party in possession. Should suit be brought in the federal court, under the Nebraska statute, against a party in possession, there would be force in the objection that a legal controversy was withdrawn from a court of law; but that is not this case, neither is it of such

cases we are speaking. Undoubtedly, as a foundation for the relief sought, the plaintiff must show that he has a legal title to the premises, and, generally, that title will be exhibited by conveyances or instruments of record, the construction and effect of which will properly rest with the court. Such, also, will generally be the case with the adverse estates or interests claimed by others. This was the character of the proofs establishing the title of the complainant in *Clark* v. *Smith, infra.* But should proofs of a different character be produced, the controversy would still be one upon which a court of law could not act. It is not an objection to the jurisdiction of equity that legal questions are presented for consideration which might also arise in a court of law. If the controversy be one in which a court of equity only can afford the relief prayed for, its jurisdiction is unaffected by the character of the questions involved." Page 25, 110 U. S., and page 501, 3 Sup. Ct. Rep.

And see *Reynolds* v. *Bank,* 112 U. S. 405, 5 Sup. Ct. Rep. 213; *Chapman* v. *Brewer,* 114 U. S. 158, 5 Sup. Ct. Rep. 799; *U. S.* v. *Wilson,* 118 U. S. 86, 6 Sup. Ct. Rep. 991; *Frost* v. *Spitley,* 121 U. S. 552, 7 Sup. Ct. Rep. 1129; *Whitehead* v. *Shattuck,* 138 U. S. 146, 11 Sup. Ct. Rep. 276; *Clark* v. *Smith,* 13 Pet. 195; *Hurt* v. *Hollingsworth,* 100 U. S. 100.

These cases were mostly founded on state statutes, and were all commenced by bill in equity; and there are expressions in the opinions in most of them indicating that the appropriate mode of proceeding in such cases in the courts of the United States, when the land is unoccupied, is by bill in equity. Of course, if the defendant is in possession of the property, the plaintiff has an adequate remedy at law, and cannot resort to equity, although the state statute confers equitable jurisdiction on the state courts in such a case. Id. And as a bill in equity is the proper mode of proceeding under this statute, in the federal courts, the pleadings and practice in such cases should conform, as nearly as may be, to the pleadings and practice in equity suits in those courts. No objection was taken below, and none is made in this court, to the form of the action or the pleadings in the case. It was tried before the court below upon a stipulation which waived a jury. If it was an equity case, then it was properly before the court. If it was a case at law, a jury having been waived, it was also properly there. The record contains all the evidence, and the case will be treated as a suit in equity, and heard on the appeal, though the result would be the same if we treated it as an action at law.

The only evidence introduced on behalf of the complainant was a patent from the United States of America, to himself, for "the north half of the northwest quarter, the northwest quarter of the northeast quarter, of section twenty-one, and the northeast quarter of the northeast quarter of section twenty, in township fifty-five north, of range twenty-five west, of the fourth principal meridian, in Minnesota, containing one hundred and sixty acres," dated October 11, 1888. What relation this patent has to the town lots in Grand Rapids described in the bill is not very clear, but as both parties tried the case below on the assumption that the lands described in the patent introduced by the appellant, and in the deeds introduced by the appellee, were the lands in controversy,

we may reasonably infer that the town of Grand Rapids is laid out in whole or in part on these lands. The appellee's evidence consists of a warranty deed from the appellant to him, dated the 19th day of September, 1883, for "an undivided one half" of the lands described in the patent introduced by the appellant, and a sheriff's deed to the appellee for an undivided half of the same land, dated the 13th day of July, 1885, and based on proceedings and a judgment in a suit begun by attachment on the 30th day of March, 1885, by the appellee against the appellant, in the district court of Aitkin county, Minn.

The first contention of the appellant is that, as the patent from the United States to him is dated in 1888, and the sale under the proceedings in the attachment suit was made in 1885, the complainant had at the latter date no title or interest in the land subject to sale on execution, and the appellee, therefore, acquired no title by his purchase and sheriff's deed. This contention rests on the assumption that the patent proves that the appellant had no interest in the land subject to sale on execution before the date of the patent. This is not a sound position. The appellant acquired an equitable title to the land—which was subject to sale on execution—when he paid the entrance money, and received the certificate of entry from the proper land officer. The court will take judicial notice of the manner in which the public lands are sold by private entry, and knows, therefore, that the issue of the certificate of entry and the patent are not the same or simultaneous acts. It is very well known that several years may, and usually do, elapse between the date of the entry and the issuance of the patent, when no special effort is made to hasten its issue. The appellant presumably has the certificate of entry in his possession. He is its only rightful custodian. That certificate was the best evidence of the date of the entry. The patent conveyed the fee, but was no evidence of the date of the entry. It only shows that the appellant purchased and paid for the lands some time prior to its date. It may have been one or ten years prior. It did not prove that the entry was not made before the sheriff's sale.

Moreover, it appears the appellant in 1883 made a warranty deed to an undivided half of these lands to the appellee. This he could not rightfully do unless he had then entered the whole of the lands. If he had no interest in the lands at that time, he was guilty of a fraud in making that deed. In that deed he asserts in terms that "he is well seised in fee of the lands, * * * and has good right to sell and convey the same." This is a solemn written declaration that he owned an undivided half of the lands at the date of this deed. As he could not own an undivided half unless he had entered the whole,—for the United States never sells an undivided half interest in her public lands subject to private entry,—it is an admission that he had entered the whole.

Objection was made to the introduction of the record in the attachment suit upon various grounds, but principally upon the ground that the affidavit to prove publication of the summons was defective in this:

The statute requires that the summons shall be published "once in each week for six consecutive weeks," and the proof of publication first filed stated that it had been published "for the period of seven successive weeks." Under the decisions of the supreme court of Minnesota this proof was defective. *Godfrey* v. *Valentine*, 39 Minn. 337, 40 N. W. Rep. 163.

Afterwards the plaintiff's attorney filed a petition in writing, under oath, before the judge of the district, setting forth the defect in the first affidavit, and stating that, while "said affidavit did not state that it was published 'once in each week,' in fact said summons was published once in each week for the said seven successive weeks, and that the defendant has not conveyed the lands sold on the execution upon said judgment." Upon filing this petition the judge made the following order:

"Upon reading the foregoing affidavit, and on motion of D. E. Secombe, attorney for the plaintiff in the foregoing entitled action, it is hereby ordered that said plaintiff be hereby allowed to file in the said action a proper and sufficient affidavit of the publication of said summons *nunc pro tunc*, which shall be part of the judgment roll in said action.

"G. W. HOLLAND, District Judge."

Thereupon an affidavit of proof of the publication of the summons was filed, which conformed in all respects to the requirements of the statute. Objection is made to the admission and consideration of this last proof of publication. On the 22d day of July, 1885, the execution in the attachment suit was returned satisfied by the sale of the attached lands. Appellant insists that the expiration of the term, and the satisfaction of the judgment, terminated the suit, and that after that the district court had no power or jurisdiction to make any order in the case, or permit proof of publication to be filed. It is undoubtedly the rule in the federal courts, and in many of the states, that, after the term has ended, all final judgments and decrees of the court pass beyond its control unless steps be taken during the term, by motion or otherwise, to set aside, modify, or correct them. *Bronson* v. *Schulten*, 104 U. S. 410–417. But this rule is not uniform. In some states, and notably in Minnesota, it has been abrogated or very much expanded. The General Statutes of Minnesota provide:

"Sec. 124. *Amendment by Order.* The court may, before or after judgment, in furtherance of justice and on such terms as may be proper, amend any pleading, process, or proceeding, by adding or striking out the name of any party, or by correcting a mistake in the name of a party, a mistake in any other respect, or by inserting other allegations material to the case, or, when the amendment does not change substantially the claim or defense, by conforming the pleading or proceeding to the fact proved.

"Sec. 125. *Extension of Time — Relief against Mistakes — Opening Judgments, Etc.* The court may likewise, in its discretion, allow an answer or reply to be made or other act to be done, after the time limited by this chapter, or by an order enlarge such time; and may also, in its discretion, at any time within one year after notice thereof, relieve a party from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, suspense, or excusable neglect; and the court may, as well in

vacation and out of term as in term, and without regard to whether such judgment or order was made and entered, or proceedings had, in or out of term, upon good cause shown, set aside or modify its judgments, orders, or proceedings, although the same were made or entered by the court, or under or by virtue of its authority, order, or direction, and may supply any omission in any proceeding. And, whenever any proceeding taken by a party fails to conform to the statute, the court may permit an amendment to such proceeding, so as to make it conformable thereto; but this section does not apply to a final judgment in an action for divorce." Gen. St. Minn. 1878, c. 66, §§ 124, 125, pp. 724, 725.

Construing this statute, the supreme court of Minnesota has decided that motions, though in terms made before the judge, must be held to have been addressed to the court. *Johnston* v. *Higgins*, 15 Minn. 486, (Gil. 400.) The authority of the judge at chambers, under the statute, is the authority of the court itself. And, upon this very question of filing proof of publication after the expiration of the term, the court in *Burr* v. *Seymour*, 43 Minn. 401, 45 N. W. Rep. 715, said:

"This action was commenced against a nonresident defendant by publication of the summons, and judgment was entered against him by default. The affidavit of publication of the summons filed with the clerk for entry of judgment did not show a sufficient publication. Defendant, appearing specially for that purpose, moved to set aside the judgment on that ground. The plaintiff at the same time moved for leave to file, *nunc pro tunc*, a proper and sufficient affidavit of publication. The motions were heard at the same time, and by the same order the first motion was granted and the second denied. * * * The question is, then, was the plaintiff entitled, under the facts appearing, to have the record corrected so as to show the fact as it actually was? We think he was. The jurisdiction of the court was acquired by the fact of service, and not from the proof of it filed. *Kipp* v. *Fullerton*, 4 Minn. 473, (Gil. 366;) *Commissioners* v. *Morrison*, 22 Minn. 178. So that, as soon as the summons was duly published, the jurisdiction over the cause was complete, though no affidavit of publication had been made. And we may say here that, were this judgment set aside, the plaintiff could at once file proper proof of publication, and, as the time for defendant to answer had expired, the same judgment might immediately be entered. The plaintiff was in the same position when the judgment was entered. He was entitled to the judgment. By reason of the mistake or inadvertence in the matter of the affidavit of publication filed, he failed to secure a judgment valid upon the record, but which would be valid if the fact as it was in respect to the publication had been made to appear in the record. The power of the court to amend the record in such a case cannot be doubted. Gen. St. Minn. 1878, c. 66, §§ 124, 125. It is a power given to be exercised in the furtherance of justice. Of course, if, since the entry of such a judgment, circumstances have arisen that would make it unjust to the defendant, or if rights of third parties have intervened so that the amendment might operate as fraud upon them, it ought not to be allowed. A party ought not to be relieved, at the expense of others, from the consequences of his own mistake or inadvertence. If any one must suffer from it, he, and not other innocent persons, should be the sufferer. But where, as in this case, there is only the bare fact that, in a cause of which the court had complete jurisdiction, the party has failed, through mistake, to secure what he was of right entitled to, we think that the statute intends that the omission or mistake shall be corrected. If not a matter of strict right in such a case, sound discretion should grant the relief."

And see *Kipp* v. *Fullerton,* 4 Minn. 473, (Gil. 366;) *Commissioners* v. *Morrison,* 22 Minn. 178; *Golcher* v. *Brisbin,* 20 Minn. 453, (Gil. 407;) *Johnston* v. *Higgins,* 15 Minn. 486, (Gil. 400.)

It is apparent, upon examination of the statutes of Minnesota, and the decisions of the supreme court of that state, that the judge of the district court had authority to make the order authorizing a proper proof of publication to be filed in the case *nunc pro tunc,* and that, when such proof was filed, it became a part of the files of the case, and proved the jurisdiction of the court in the cause as effectually as if it had been filed at the term and before the judgment was entered. Filing this proof of publication did not confer the jurisdiction; it only proved the fact of its existence. · The doctrine of the Minnesota court is that the jurisdiction of the court is acquired by the due publication of the summons, and not from, or by, the filing of the proof of its publication. If the summons is in fact published as required by the statute, the court has jurisdiction to proceed with the cause. The proof of its publication may be filed at the return term, or, by leave of the court, at any subsequent term, unless circumstances have arisen that would make it unjust to the defendant or to innocent third parties. Nor did the amended proof of publication, as argued by appellant's counsel, have the effect to transfer the title to the land from the appellant to the appellee. That had already been done, and the perfected proof of publication was filed to preserve the evidence of that fact, and as one of the muniments of the appellee's title. When a legislative act is passed curing a defectively acknowledged deed, the title to the land is not thereby transferred from the grantor to the grantee in the deed. That was done when the deed was made, and the curative act merely removes an impediment to the proof of that fact, or, rather, supplies proof of that fact, by converting the defective acknowledgment into a valid one.

The fact is established by this amended proof of publication that the court had jurisdiction in the attachment suit. That being so, its judgment is not open to collateral attack, however erroneous it may be. It is unnecessary, therefore, to inquire whether there are any mere irregularities or errors in the proceedings for which a court exercising appellate jurisdiction would reverse the judgment.

It is the settled doctrine of the supreme court of the United States that an attachment suit against an absconding or nonresident debtor, who does not appear to the action,—which is the case disclosed by the record put in evidence by the appellee,—is a proceeding *in rem,* in which the levy of. the attachment on the property is the one essential requisite to the exercise of jurisdiction; and that when the writ has been issued, the property seized, condemned, and sold, the jurisdiction of the court over the property is not affected by the fact that there was an insufficient or no publication of notice to the defendant. *Cooper* v. *Reynolds,* 10 Wall. 308. In that case, Mr. Justice MILLER, who delivered the opinion of the court, says to hold any other doctrine would be "to overturn the uniform course of decision in this court, to unsettle titles to vast

amounts of property long held in reliance on those decisions, and in our judgment would be to sacrifice sound principle to barren technicalities. * * *" It is believed the doctrine of the supreme court of the United States on this question is generally approved by the state courts. In *Freeman* v. *Thompson*, 53 Mo. 183, 198, Judge SHERWOOD, after discussing the question and citing authorities to support the view maintained in *Cooper* v. *Reynolds*, *supra*, says: "And I very much doubt whether a single well-considered case can be found in opposition thereto." *Kane* v. *McCown*, 55 Mo. 181; *Johnson* v. *Gage*, 57 Mo. 160; *Paine* v. *Mooreland*, 15 Ohio, 435. It is not necessary to the decision of this case to determine what the doctrine of the supreme court of Minnesota is on this subject. In the case of *Kenney* v. *Goergen*, 36 Minn. 190, 31 N. W. Rep. 210, Judge MITCHELL, who delivered the opinion of the court, said:

"The proceedings, [by attachment against a nonresident debtor,] although in form *in personam*, are in effect *in rem*, and it is only by *attaching* the property that the court acquires jurisdiction, and then only to the extent of the property attached."

In support of this proposition, the learned judge cites, among other authorities, with apparent approval, *Cooper* v. *Reynolds*, *supra;* but it is not clear that the court meant to adopt the doctrine of that case in all its breadth. In the attachment suit we are considering, the property was seized on the writ of attachment, and there was due publication of the summons to the defendant also, so that the court had jurisdiction over the attached property under either rule.

It is further contended that it was essential to the exercise of any jurisdiction by the court that the affidavit for attachment should state that the defendant had property in the state subject to attachment, and fully describe the same. But this is not the law in Minnesota. *Kenney* v. *Goergen*, 36 Minn. 190, 31 N. W. Rep. 210. Another objection is that the requisite notice of the sale on execution of the attached property was not given by the sheriff. The statute (Gen. St. Minn. 1878, c. 66, § 318) expressly provides that the failure of the sheriff to give the required notice of the sale of lands on execution shall not affect the validity of the sale, "either as to third persons or parties to the action."

It is further objected that the proceeding of the attachment against L. L. Biglow gave the court no jurisdiction to enter judgment and sell the lands of Lee L. Bigelow, when there was no appearance to the action. The bill was filed in the name of Lee L. Bigelow, but there is no allegation or proof that that is his name, nor is it alleged that the attachment suit in the state court was not brought against him by his proper name. The cause of action in the attachment suit was a note signed "L. L. Bigelow," and the appellee proved that the appellant made and signed that note, and that he was the person sued in that action. Having signed the note by his initials, he cannot, at this day, complain that he was sued on that note by those initials. But if it was irregular to sue him by his initials, it was a matter in abatement at the most, and did not affect the jurisdiction of the court. The slight

difference in the spelling of the surname is not worthy of serious consideration, and would not be if the appellant had proved which spelling he preferred. The learned counsel for the appellant cited the St. Paul City Directory in support of the contention that "Big-e-low" is the proper spelling and pronunciation of the appellant's name, and that it is a different name from "Biglow." On a question of spelling and pronunciation, we think Professor Lowell and Webster's Dictionary are safer guides than the City Directory of St. Paul. Prof. Lowell spells the name "Biglow," (The Biglow Papers,) and when it is spelled with an "e" that letter is obscure or mute, (Webst. Dict.) It is the same name in law, whether spelled with or without the "e," and, if the appellant did not know this when he read the published summons, it was because he did not know his own name when he saw it.

The decree of the circuit court is affirmed.