[No. 18315. In Bank.—April 5, 1895.]

# A. W. STINCHFIELD, RESPONDENT, *v.* J. N. GILLIS ET AL., APPELLANTS.

MINES—CONVEYANCE BY OWNER OF TWO CLAIMS HELD AS ONE—INTER-SECTION OF VEINS—TITLE OF GRANTEE—ESTOPPEL BY DEED.—Where the dividing line between the original locations of two mining claims has been disregarded by one who has become the owner of both of them, and he has sold and conveyed a portion thereof in a deed of convey-ance not purporting to be made in accordance with the lines or claim of any previous location, but as a conveyance of a tract of mining ground carved out of the entire tract by metes and bounds agreed upon between the parties, the grantor is estopped by his deed from questioning the right of his grantee to all of the gold found within the surface lines of the deed, irrespective of the depth below the surface at which it is found and such grantee has title to the gold found at the place of inter-section of two veins falling within the surface lines of the deed.

ID.—CONSTRUCTION OF REVISED STATUTES—PRIORITY OF LOCATION OF IN-TERSECTING VEINS—EFFECT OF DEED.—Where the proprietor of a tract of mining ground which had been derived through several locations dis-poses of the same in parcels, irrespective of the lines of the locations, the rights of his grantees are measured by the terms of their deeds. Section 2336 of the Revised Statutes of the United States providing that when two veins intersect, priority of title shall govern as to the ore or mineral contained within the space of intersection, has no applica-tion to a conveyance of part of a mining claim, in respect to which there is no priority of location, and was not intended to limit or define the rights of a person in possession of a tract of mining ground where there is more than one vein, or to prescribe the effect of a conveyance by the locator of a claim of a portion of his location; but the sole object of that section is to supplement the provisions of section 2332, and to prescribe rules under which different locations by different proprietors should be held, and to determine the rights of such proprietors in case of inter-secting veins.

ID.—DESCRIPTION—BOUNDARIES — PAROL EVIDENCE — MONUMENTS—IDEN-TITY OF LAND.—In the description of the boundaries in a conveyance, monuments designated as the corners of the tract conveyed, which can be ascertained, will prevail over designated measurements, and parol evidence offered for the purpose of pointing out upon the surface of the earth the monuments which had been agreed upon in the sale, and which were named in the conveyance, is admissible to show the identity of the land conveyed with that upon which the trespass was committed.

APPEAL from a judgment of the Superior Court of Tuolumne County and from an order denying a new trial.

The facts are stated in the opinion of the court.

*F. W. Street,* and *J. F. Rooney,* for Appellants.

The deed from defendant Gillis to plaintiff conveyed to the latter the same title he would obtain by a United States patent to the Pine Tree mine and no more. (*Stinchfield* v. *Gillis,* 96 Cal. 37.) A patent to Stinchfield of the Pine Tree mine would convey to him all veins, lodes, and ledges having their apexes upon the Pine Tree mine throughout their entire depth, with the right to follow the same beyond the vertical side lines of the location, but if any such veins, lodes, or ledges intersected any vein, lode, or ledge having its apex on the Carrington or other mine, then the ore at such point of intersection would belong to the mine that was located prior to the Pine Tree mine. (U. S. Rev. Stats., secs. 2322, 2336; *Champion Min. Co.* v *Consolidated etc. Min. Co.,* 75 Cal. 78; *Stinchfield* v. *Gillis, supra.*) The Carrington mine, being a separate and independent location made prior to the location of the Pine Tree mine, the ore contained within the space of intersection of the Rice and West veins was as much a part and portion of the Carrington mine as was any part of the surface or of any part or portion of any vein or lode having its apex on the Carrington mine, and the ore contained within the space of intersection of the veins in controversy never constituted any portion of the Pine Tree mine, and hence was not conveyed to plaintiff. (U. S. Rev. Stats., sec. 2336.) The facts found, upon which the respondent claims an estoppel *in pais,* are not sufficient to constitute either an equitable or legal estoppel on Gillis. (*Boggs* v. *Merced Min. Co.,* 14 Cal. 367; *Dean* v. *Parker,* 88 Cal. 288; *Leonard* v. *Flynn,* 89 Cal. 535; 23 Am. St. Rep. 500; Bigelow on Estoppel, 3d ed., 483, 484.) The description of the land conveyed by the deed from Gillis to Stinchfield being clear and specific, parol evidence was inadmissible to show the boundaries of the lands described in the deed. (*Osborn* v. *Hendrickson,* 7 Cal. 282; *Donahue* v. *McNulty,* 14 Cal. 412–18; *Dent* v. *Bird,* 67 Cal. 652; *Frink* v. *Roe,* 70 Cal.

316; *Pierson* v. *McCahill,* 21 Cal. 122–29; *Bell* v. *Morse,* 6 N. H. 205.)

*I. M. Kalloch, F. P. Otis,* and *Wheaton, Kalloch & Kierce,* for Respondent.

HARRISON, J.—Upon the former appeal in this case (96 Cal. 33) it appeared that the Carrington mine was a single claim held by the defendant Gillis, of which he had sold a portion to the plaintiff, and it was held that by virtue of his deed to the plaintiff Gillis was estopped from questioning the right of his grantee to all of the gold found within the surface lines of the deed, irrespective of the depth below the surface at which it was found. After the case went down to the superior court for another trial the defendants amended their answers, presenting issues to the effect that the tract of ground which was sold to the plaintiff was known as the Pine Tree claim, and was distinct from that known as the Carrington claim, which was retained by Gillis, and had been located subsequent to the location of the Carrington claim; that upon these facts they were entitled to the gold found at the place of intersection of the Rice vein and the West vein, although that place of intersection was within the surface lines of the grant to the plaintiff. Upon the issues thus presented, the court found that for nearly fourteen years prior to the sale to the plaintiff the mining ground held by the defendant Gillis, including that sold to the plaintiff, as well as that retained by himself, had been held and claimed by him as a single mining claim, and was known and designated as the "Carrington" claim, and that during this time no Pine Tree mine or claim had existed; that prior to the sale and conveyance to the plaintiff, Gillis had pointed out to him the boundaries of the Carrington claim, and told him that the ground so sold and conveyed was a part of that claim; that before the execution of the deed Gillis and the plaintiff went together upon the ground and marked off and agreed upon the

portion of the claim to be sold to the plaintiff, and established visible monuments at each of the four corners,
and agreed upon the dividing line between the portion
to be sold to the plaintiff and the portion to be retained
by the defendant, and established and agreed upon permanent monuments marking said dividing line; that
the ground was conveyed according to these monuments,
and in the conveyance to the plaintiff was designated as
the Pine Tree mine for the purpose of distinguishing it
from the remaining part of the Carrington claim retained by Gillis. In 1854 the Carrington claim was
located for one thousand feet in length, and one hundred feet on each side of the vein, and in 1859 or 1860
T. E. Carrington, then being in possession of the Carrington claim, posted notices on the Pine Tree vein,
adjacent thereto on the east, claiming three hundred
feet along said vein. Carrington remained in possession
of this property until some time in 1870, when he moved
away from the county, leaving the whole of the mining
ground in charge of one Stoker, and instructed him to
do the assessment work thereon. Stoker took possession of the entire ground in which the Carrington and
Pine Tree veins lay, and held it for Carrington as one
claim until June, 1872; and during this time the entire
ground was held and known as the Carrington claim,
and all the assessment work that was done upon the
ground was done as and for the Carrington claim. In
June, 1872, Carrington sold to the defendant Gillis his interest in the mining ground—including in the deed of
conveyance claims on all sides of the Pine Tree mine, but
not mentioning any claim or mining ground by that
name—and upon the execution of this deed Stoker turned
over to Gillis the possession of all the ground that he
had been holding for Carrington; and Gillis remained in
possession thereof until his conveyance to the plaintiff
in 1886. Upon these facts the court rendered judgment
in favor of the plaintiff. The defendants have appealed.

We are of the opinion that the additional facts presented upon this appeal do not take the case out of the

principles under which the decision of the former appeal was given. The mining ground held by Carrington, of which Gillis took possession under his deed of June, 1872, must be considered as a single claim, irrespective of the original locations of the different parts of the claim. Whatever distinction may have been at one time observed between the original location of the Carrington mine and that of the Pine Tree mine, it was disregarded by Carrington during a large portion of the time these claims were held by him, and after he left the county the entire mining ground, which included them both, was treated as one claim, not only while Stoker held them, but also during all the time that Gillis held them until his conveyance to the plaintiff. That conveyance did not purport to be made in accordance with the lines or claim of any previous location, but was a conveyance of a tract of mining ground carved out of another tract known as the " Carrington" claim by metes and bounds agreed upon between the parties, and which they both treated as a part of the Carrington claim, but which, for the sake of convenience, was designated in the conveyance as the Pine Tree claim. Under these facts the conveyance from Gillis to the plaintiff must have the same effect as though the entire ground held by him previous to the conveyance was held by mere possession, or under a patent from the United States, or as if the two veins were a part of the same location. At the former appeal herein it was held that if the locator of a mining claim should convey a portion of his claim without any reservation in his deed of conveyance, his grantee would be entitled to all the gold that might be found within the ground conveyed in any vein whose apex was within the surface lines of his deed; so, if a locator should convey to A the east half of his claim, and afterward should convey the west half to B, each of his grantees would in the same manner be entitled to all of the gold found in any vein which was entirely within the surface lines of his conveyance; and, on the same principle, if the proprie-

tor of a tract of mining ground which has been derived
through several locations should dispose of the same in
parcels irrespective of the lines of such locations, the
rights of his grantees would be measured by the terms
of their deeds.   In such cases section 2336 of the Re-
vised Statutes of the United States has no application.
That statute was not intended to limit or define the
rights of a person in mere possession of a tract of
mining ground where there is more than one vein, or
to prescribe the effect of a conveyance by the locator
of a claim of a portion of his location containing one
of such veins.   The object of the statute was to supple-
ment the provisions of section 2332, and to prescribe
rules under which different locations by different pro-
prietors should be held, and to determine the rights of
such proprietors in case of intersecting veins.   At the
date of the passage of that act, May 10, 1872, the Car-
rington claim was and had for many years been held
as a single claim, without any adverse claim thereto,
and it continued so to be held until the conveyance by
Gillis to the plaintiff in 1886.   The position of the pro-
prietor of a mining claim who conveys a portion thereof,
and retains the remainder, is analogous to the position
of the United States after it has issued its patent for a
location.   As the United States, as well as a subsequent
locator, holds the unpatented claim subject to the prior
rights of the patentee, as prescribed by section 2336, so
the grantor of a portion of his claim, in the absence of
any reservation in his deed, or proof of mining customs,
holds the ungranted portion subordinate to the rights
of his grantee in the ground conveyed.

The effect of the deed from Gillis to the plaintiff was
to estop him and those claiming under him from ques-
tioning the title of the plaintiff to all the gold that
might be found in the West vein, within the surface
lines of his deed.   The gold in controversy was found
within the surface lines of this deed, and it was also
found within the limits of the two walls forming the
West vein, although the place at which it was found is

also within the lines of the walls which form the Rice vein. This latter circumstance does not, however, relieve Gillis from the estoppel of his deed, for, as the deed contains no reservation, and as there was no evidence at the trial of any mining customs, effect must be given to the deed according to its terms, by holding that the entire West vein within the surface lines, even though intersected by another vein, passed to the plaintiff. In thus holding, we concede that, when mining ground is conveyed by deed without express limitation, the grantee takes subject to the characteristics of mining property given to it by prevailing customs and laws, and not with the absolute dominion which flows from a conveyance in fee of ordinary land. The mining land thus granted is still subject to all mining laws and customs which are applicable, but the provision of section 2336 that, when two veins intersect, " priority of title shall govern, and such prior location shall be entitled to all ore or mineral contained within the space of intersection," cannot possibly be applied to the case where A conveys part of his mining claim to B, for in such a case there is no " prior location." Therefore, in such a case, the ordinary rules which govern grants of land must of necessity apply; and, if the intersection takes place on part of the claim conveyed, the grantee takes all the mineral within the space of intersection.

Whether the plaintiff would have been entitled to follow the West vein into the ground retained by Gillis, and to claim the gold found therein, or whether Gillis would have been entitled to any of the gold that might be found in the Rice vein, within the ground conveyed to the plaintiff, are questions which are not involved in this appeal, and upon which we do not express any opinion. All that we hold is that, inasmuch as the gold in question was within the ground conveyed by Gillis to the plaintiff, and in a vein whose apex was within the surface lines of that ground, it belonged to the plaintiff.

Certain rulings of the court upon the admission of

evidence to show the boundaries of the lands described in the deed from Gillis to the plaintiff are assigned as error; but we are of the opinion that the rulings were correct. The description in the complaint follows that in the deed from Gillis to the plaintiff, and, in addition to giving the length of each side of the ground, designated certain monuments as the corners of the tract conveyed. If these monuments can be ascertained, they will prevail over the designated measurements, and the evidence offered was for the purpose of pointing out upon the surface of the earth the monuments which had been agreed upon in the sale, and which were named in the conveyance. For this purpose the court was authorized to receive parol evidence in order to show the identity of the land so conveyed with that upon which the trespass had been committed.

The judgment and order are affirmed.

McFARLAND, J., and VAN FLEET, J., concurred.

GAROUTTE, J., concurring.—While I do not think the decision in this case upon the former appeal is at all conclusive, as to the questions raised by the present appeal, still I concur in the judgment upon the ground that the facts do not bring the case within the provisions of section 2336 of the Revised Statutes of the United States. And when that statute does not apply, and there is no other law or mining custom applicable to the facts, I think the grantee of the surface ground must be held to take all the mineral at the point of intersection.