## MONTANA ORE PURCHASING COMPANY, RESPONDENT, *v.* BOSTON & MONTANA CONSOLIDATED COPPER & SILVER MINING COMPANY, APPELLANT.

(No. 1,629.)

(Submitted January 22, 1902.   Decided December 24, 1902.)

*Mining Claims — Deeds — Extralateral Rights — Pleading—Joinder of Causes of Action—Separate Dismissal—Equity—Action to Quiet Title—Constitution—Jury Trial—Evidence—Costs—Order Taxing Costs—Appeal.*

1. Where a complaint joins two causes of action,—the first to recover damages for trespass upon mining property, and the second a statutory action, under Section 1310, Code of Civil Procedure, to quiet title to the premises

in controversy and for an injunction to restrain the defendant from trespassing thereon or asserting any right or title thereto, the latter action was not ancillary to the former but a wholly independent cause of action, hence the dismissal by the plaintiff of the first cause of action did not operate as an abatement of the second cause of action.

2. Since parties in an action under Territorial Acts 1864-65, p. 92, Section 233, authorizing an action to determine an adverse claim to real property or an interest therein, in force prior to the adoption of Constitution, Art. III, Section 23, declaring that the right of trial by jury shall be secured to all and remain inviolate, were not entitled to a jury trial of such action, a defendant in an action under such statute, as re-enacted in Code of Civil Procedure, Section 1310, subsequent to the constitution, to try an adverse claim to mining property, is not entitled to have the issues submitted to a jury. (Mr. Justice Pigott dissenting.).

3. Code of Civil Procedure, Section 1310, confers on courts of equity power not previously existing to ascertain and quiet title to real property without the intervention of a court of law.

4. Where, in an action to determine adverse claims to mining property, it was proved that plaintiff had title to, and possession of, surface containing the apices of veins with extralateral rights, and the continuity and identity of said veins from the apices to the point in dispute was demonstrated, it necessarily followed that plaintiff had the title and lawful possession of the veins on the dip and strike, and was entitled to the relief demanded, notwithstanding the *prima facie* presumption in favor of defendant's title to everything beneath its surface.

5. In actions to determine adverse claims to patented mining claims, questions concerning conflicting extralateral rights are similar in their nature to those adjudicated in actions to determine adverse claims to surface rights, and are governed by the same principles.

6. Where, in an action to determine an adverse claim to mining property, evidence as to the location of the veins, their apices, and their dip and strike, was conflicting, a finding of the trial court on such issues will not be reversed on appeal.

7. Where, in an action to determine an adverse claim to mining property, defendant contended that there were veins which had their apices in plaintiff's claim, which in their descent into the earth united with those having their apices in plaintiff's claim, giving defendant title to the whole vein below the point of union, but the court found that no such veins existed, the exclusion of the notice of location of defendant's claim and conveyances before the issuance of his patent, to show that such claim was located prior to plaintiff's claim, was harmless.

8. The trial court has discretionary power to permit a complaint to be amended at the close of the evidence to conform to the proof, and to deny a motion for a postponement of the trial therefor, where the amendments presented no issue other than those tried in the evidence, and it did not appear from the affidavits filed at the time the ruling was made or in support of the motion for new trial, that the defendant had other evidence which it could have presented had the postponement been granted.

9. In an action to quiet title to mining property, *held*, that certain amendments made to the complaint, at the close of the evidence, did not present new issues.

10. A deed to a patented lode mining claim, or a definite portion thereof embracing an apex or apices, as such,—in the absence of words of express reservation, will be presumed to convey whatever substantial property rights are attached to that species of property; and since extralateral rights are not a mere incident or appurtenance but a substantial part of such property itself, the grantee in such deed is vested with such rights upon vein or veins, extralaterally, as belong to the apex or apices embraced within the boundaries of the conveyed property.

11. Where a portion of a patented lode mining claim is conveyed by metes

and bounds and the end lines of the conveyed portion are not parallel with the end lines of the claim as patented, such extralateral rights, and such only, are conveyed as appertain to the portion of the apex embraced within the boundaries of the conveyed portion, bounded by planes parallel with the end lines of the claim as patented.

12. Under Code of Civil Procedure, Section 1866, expenses paid for models, for surveys, for development work done in preparation for trial of an action to determine adverse claims to mining property cannot be taxed as costs.

13. Code of Civil Procedure, Section 1866, authorizing the taxation of legal fees paid stenographers for per diem or for copies, as disbursements, is limited to fees paid official stenographers, and does not authorize the taxation of such disbursements paid to private stenographers who attended the trial of an action in the place of the official stenographer by the consent of the parties and of the court.

14. No appeal lies from an order taxing costs ; exceptions to such order are properly reviewable on appeal from the judgment.

*Appeal from District Court, Silver Bow County; William Clancy, Judge.*

ACTION by the Montana Ore Purchasing Company against the Boston & Montana Consolidated Copper & Silver Mining Company. From a judgment in favor of plaintiff and an order denying a new trial, defendant appeals. Modified.

*Messrs. Forbis & Evans, Mr. William Scallon, Mr. Thos. Patterson,* and *Mr. A. J. Shores,* for Appellant.

The equity action is ancillary to the law action originally begun and joined with it, and the dismissal or abatement of the law action *ipso facto* dismissed or abated the equity action. (*Markell* v. *Kasson,* 31 Fed. 104; *Robertson* v. *Bingley,* McCord's Ch. 333.)

Under the allegations and proof an action to quiet title is not maintainable. (17 Ency. of Pl. & Pr. p. 277; *Woodward* v. *Seely,* 11 Ill. 157; *Am. Dock & Improvement Co. v. Trustees, etc.,* 37 N. J. Eq. 266; *Eldridge* v. *Hill,* 2 John. Ch. 281; *Rich* v. *Dorland,* 6 Cal. 33; *Curtis* v. *Sutter,* 15 Cal. 260; *Hutchinson* v. *Howe,* 100 Ill. 11; 1 Am. & Eng. Ency. of Law, p. 789; *Orton* v. *Smith,* 18 How. 263; *Frost* v. *Spitley,* 121 U. S. 552; *Von Drachenfels* v. *Doolittle,* 77 Cal. 295; *Fudicker* v. *East Riverside Irr. Dist.,* 109 Cal. 29; *State* v. *S. C. & P. R. R. Co.,* 7 Neb. 357; *Thomas* v. *White,* 2 Ohio St. 540; *Shanahan* v. *Crampton,* 92 Cal. 14; *Kennedy* v. *Elliott,* 85 Fed. 832; *Love*

v. *Morrill,* 19 Oregon, 545 ; *Dyce* v. *McAulay,* 22 Oregon, 456 ; *Minor* v. *Caples,* 23 Oregon, 303 ; *Wetherbee* v. *Dunn,* 36 Cal. 249 ; *Bressler* v. *Pitts,* 58 Mich. 347 ; *Wilson* v. *Hart* (Mo.), 12 S. W. 249 ; *Moores* v. *Townshend,* 102 N. Y. 393 ; *O'Hara* v. *Parker,* 27 Oregon, 169 ; *Whitehead* v. *Shattuck,* 138 U. S. 146.)

The defendant was entitled to a jury trial.    (4 Am. & Eng. Ency. of Law, pp. 838, 839 ; *North Pa. Coal Co.* v. *Snowden,* 42 Pa. St. 488 ; *Norris's Appeal,* 64 Pa. St. 275 ; *Tabor* v. *Cook,* 15 Mich. 322 ; *Davis* v. *Morris,* 36 N. Y. 569 ; *Donahue* v. *Meister,* 88 Cal. 121 ; *Newman* v. *Duane,* 89 Cal. 597 ; *Hughes* v. *Dunlop,* 91 Cal. 385 ; *Park* v. *Wilkinson* (Utah), 60 Pac. 954 ; *Taylor* v. *Ford,* 92 Cal. 419 ; *Gillespie* v. *Gowley,* 120 Cal. 515 ; *Holland* v. *Challen,* 110 U. S. 15 ; *Hofer S. M. Co.* v. *Carpenter,* 4 Nev. 497.)

The district court erred in excluding from evidence the location notice of the Pennsylvania lode claim ; the sufficiency of such location notice had been adjudicated in the land office when patent was applied for and issued, and plaintiff is in no position at this late date to contest that question.    (*Bunker Hill & S. M. & C. Co.* v. *Empire State Idaho M. & D. Co.,* 109 Fed. 538 ; *Calvin Gold M. Co.* v. *Ajax Gold M. Co.,* 182 U. S. 499 ; *Smelting Co.* v. *Kemp,* 104 U. S. 638 ; *Steel* v. *Refining Co.,* 106 U. S. 447 ; *Tucker* v. *Masser,* 113 U. S. 203 ; *Davis* v. *Weibbold,* 139 U. S. 507 ; *Kahn* v. *Mining Co.,* 2 Utah, 175, 198 ; *Chambers* v. *Jones,* 17 Mont.156 ; *Mining Co.* v. *Campbell,* 17 Colo. 267, 272 ; *Mining Co.* v. *Lee,* 21 Colo. 260 ; *Doe* v. *Mining Co.,* 54 Fed. 935 ; *Book* v. *Mining Co.,* 58 Fed. 106 ; *Eureka Consol. M. Co.* v. *Richmond M. Co.,* 4 Sawy. 302 ; *Carson City G. & S. Co.* v. *North Star M. Co.,* 83 Fed. 658.)

The district court erred in giving to plaintiff extralateral rights in the Johnstown tract to the extent defined in the decree. The only cases we know of where this question has been discussed, directly or indirectly, are the following : *Boston & Montana Con. C. & S. Min. Co.* v. *M. O. P. Co.,* 89 Fed. 529 ; *Butte & Boston Min. Co.* v. *Societe Anonyme Des Mines De Lexing-*

*ton,* 23 Mont. 177; *Montana M. Co.* v. *St. Louis M. Co.,* 102 Fed. 430.

The district court erred in re-taxing plaintiff's costs and in allowing the costs included in the order. The rule with reference to costs is that all costs in a civil action are strictly statutory. Under the common law, costs were unknown, and it is only where provision is made by express law for their allowance that costs can be taxed. (*O'Neill* v. *Kansas City S. & M. R. Co.,* 31 Fed. 663; *Studwell* v. *Cook,* 38 Conn. 549; *People* v. *Pierce,* 6 Ill. 553; *Orr* v. *Haskell,* 2 Mont. 350; 13 Century Digest, pp. 13-14.)

Under the circumstances of this case the burden of proof of the necessity and reasonableness of all of the cost charges which are controverted in this action is upon the plaintiff. (*Miller* v. *Highland Ditch Co.,* 27 Pac. 536; *Griffith* v. *Montandon,* 35 Pac. 704.)

Cost of surveys is not a proper item of costs and cannot be taxed. (*Ela* v. *Knox,* 46 N. H. 16; *N. H. Land Co.* v. *Tilton,* 29 Fed. 764; *Rothery* v. *N. Y. Rubber Co.,* 90 N. Y. 30; *Weiss* v. *Meyer,* 24 Oregon, 106; *Hughes* v. *Providence R. Co.,* 2 R. I. 493; *Tuck* v. *Olds,* 29 Fed. 883; *Heath* v. *Walton,* 9 Pa. Dist. 218.)

The stenographers' fees for copies of the evidence are not taxable as costs. (*Mark* v. *City of Buffalo,* 87 N. Y. 184; *Roundtree* v. *Remburt,* 71 Fed. 255; *Barclay* v. *Copeland,* 86 Cal. 493; *The William Branfoot,* 52 Fed. 390; *Atwood* v. *Jacquith,* 63 Fed. 561; *Hoyt* v. *Detroit, etc. Co.,* 55 Mich. 347; *Thurston* v. *Luce,* 61 Mich. 486; *Monahan* v. *Godkin,* 100 Fed. 196; *Cohen* v. *Niell,* 65 N. Y. Supp. 695; *Hamilton* v. *Butler,* 20 N. Y. Supp. 654; *McDonald* v. *Burke,* 2 Idaho, 995; *Seasongood* v. *N. Y. R. Co.,* 18 N. Y. Supp. 775; *City of Los Angeles* v. *Pomeroy,* 124 Cal. 597.)

Cost of making models cannot be taxed as costs. (*Worcester* v. *Handy,* 23 Fed. 49; *Kelly* v. *Springfield R. Co.,* 83 Fed. 183; *Parker* v. *Bigler,* Fed. Case No. 10,726; *Hussey* v. *Bradley,* Fed. Case No. 60,746 a.)

*Messrs. McHatton & Cotter, Mr. James M. Denny, Mr. Charles R. Leonard, Mr. Robert B. Smith, Messrs. Toole & Bach,* and *Messrs. Cullen, Day & Cullen,* for Respondent.

Defendant's contention that the district court erred, or that it was in any wise prejudiced by the action of the court, in dismissing the first cause of action, is without any merit. (Code of Civil Procedure, Secs. 460, 672, 1004; *Cooper* v. *Wilson,* 32 N. W. 261; *State ex rel. Reins* v. *District Court,* 22 Mont. 457; *Waterloo Min. Co.* v. *Doe et al.,* 82 Fed. 45; *Kitcherside* v. *Meyers,* 10 Oregon, 23; *Creely* v. *Brick Co.,* 103 Mass. 515; *O'Hara* v. *Parker,* 39 Pac. 1004; *Gregory* v. *Bank,* 20 N. W. 286; *Lewis* v. *Soule,* 52 Iowa, 11; *Love* v. *Bryson,* 22 S. W. 341; *Reynes* v. *Dumont,* 130 U. S. 354; *Brown* v. *Iron Co.,* 134 U. S. 535-6.)

The action as presented by the pleadings and tried is one in equity. (*Callanan* v. *Judd et al.,* 23 Wis. 343; *Truman* v. *Mc-Cullum et al.,* 20 Wis. 379; Section 17, First Div. C. C. P., Laws of 1877; Section 17, Code of Civil Procedure, Revised Stat. 1879; Section 354, Code of Civil Procedure, Revised Stat. 1879; *Wolverton* v. *Nichols,* 5 Mont. 90; *Milligan* v. *Savery et al.,* 6 Mont. 129; *Sklower* v. *Abbott,* 19 Mont. 228; *Murray* v. *Polglase,* 23 Mont. 413; *Finch* v. *Kent,* 24 Mont. 278; *State* v. *Kennedy,* 24 Mont. 56; *In re Burrows,* 7 Pac. 148; *State* v. *Saunders,* 18 L. R. A. 646; *Hall* v. *Armstrong,* 20 L. R. A. 366; *Merced Min. Co.* v. *Fremont,* 7 Cal. 317; *Brandt* v. *Wheaton,* 52 Cal. 430; *Hancock* v. *Plummer,* 66 Cal. 337; *Polack* v. *Gurnee,* 66 Cal. 267; *Benson* v. *Shotwell,* 87 Cal. 60; *Reynolds* v. *Lincoln,* 71 Cal. 186; *Castro* v. *Barry,* 79 Cal. 443; *Mantle* v. *Noyes,* 5 Mont. 275, 127 U. S. 348; *Garfield Min. Co.* v. *Hammer,* 6 Mont. 53, 130 U. S. 291; *Holland* v. *Challen,* 110 U. S. 15; *Reynolds* v. *Crawfordsville Bank,* 112 U. S. 408; *Palmer* v. *Israel,* 13 Mont. 212; *Merchants' Bank* v. *Greenhood,* 16 Mont. 434; *Banks* v. *Lee* (Conn.), 27 Am. Dec. 713; *Hartford* v. *Chapman,* 21 Conn. 488; *Swift* v. *Larrabee,* 31 Conn. 225; *Wier* v. *Mundell* (Pa.), 3 Brewst. 594; *Weiter* v. *Arnett,* 8 Ark. 57; *Boyce's Exec's* v. *Grandy,* 3 Peters, 210; Rose's

Notes on U. S. Reports, Vol. 3, p. 49; *Henderson* v. *Johns,* 13 Colo. 288; *Woodward* v. *Seely,* 11 Ill. 157; Dissenting opinion of Judges Scholfield and Mulkey in *Hutchinson* v. *Howe,* 100 Ill. 20; *Foree* v. *Stubbs* (Neb.), 59 N. W. 798; *Arndt* v. *Griggs,* 134 U. S. 316; *Angus* v. *Craven,* 64 Pac. 1091; *Pardee* v. *Murray et al.,* 4 Mont. 234; *Montana Min. Co.* v. *St. Louis M. & M. Co.,* 102 Fed. 435; *Perego* v. *Dodge,* 163 U. S. 158; *Gillis* v. *Downey,* 85 Fed. 483; *Wehrman* v. *Conklin,* 15 Sup. Ct. Rep. 129; *Roberts* v. *N. P. R. R. Co.,* 158 U. S. 1; *Migeon et al.* v. *Mont. Cen. Ry. Co.,* 77 Fed. 249; *Gatch* v. *Garretson,* 69 N. W. 550-52; *Stark* v. *Starrs,* 6 Wall. 409; *More* v. *Steinbach,* 127 U. S. 70; *St. Louis M. & M. Co.* v. *Mont. M. Co.,* 58 Fed. 129; *Smith* v. *Wingard,* 13 Pac. 717; *Bigelow* v. *Chatterton,* 51 Fed. 615; *O'Neill* v. *Tyler,* 53 N. W. 439; *Del Monte M. & M. Co.* v. *Last Chance M. & M. Co.,* 18 Sup. Ct. Rep. 895; *Wallrath* v. *Champion M. Co.,* 18 Sup. Ct. Rep. 909; *Bullion-Beck Co.* v. *Eureka Hill M. Co.,* 11 Pac. 515; *Lee* v. *Watson,* 15 Mont. 233; *C. P. G. M. Co.* v. *Chrisman,* 65 Pac. 87; *Pennie* v. *Hildreth,* 81 Cal. 127; Sections 17 and 366, C. C. P., Compiled Statutes of 1887; Section 1310, C. C. P. of 1895; *Castro* v. *Berry,* 79 Cal. 443.)

The court did not err in refusing to grant a trial by jury. (Pomeroy on Specific Performance of Contracts, Sec. 474; *Dimick* v. *Shaw,* 94 Fed. 266; *Waterloo M. Co.* v. *Doe et al.,* 82 Fed. 45; *Griffin* v. *Fries,* 23 Fla. 173; *Montgomery & F. R. Co.* v. *McKenzie,* 85 Ala. 546; *Tayloe* v. *Merchants' Fire Ins. Co.,* 9 How. 390; *Gormley* v. *Clark,* 134 U. S. p. 345; *Corning* v. *Troy Iron, etc.,* 40 N. Y. 191; *Kennedy* v. *Aggat,* 93 N. Y. 539; *Schillinger Cement Co.* v. *Arnott,* 152 N. Y. 584; *Idaho-Oregon Land Co.* v. *Bradbury,* 132 U. S. 515; *Basey* v. *Gallagher,* 1 Mont. 457, 20 Wall. 670; *Fabian* v. *Collins,* 3 Mont. 215; *Horbuckle et al.* v. *Stafford,* 111 U. S. 389; *Angus* v. *Craven,* 64 Pac. 1091; *Sanford* v. *Gates, Townsend & Co.,* 21 Mont. 286; *Loftus* v. *Fisher,* 113 Cal. 286; *Sheerer* v. *Goodwin,* 125 Cal. 154.)

There has been "due process of law" in the present action, for the trial was had according to the settled course of judicial

proceedings.   (*Walker* v. *Suvinet*, 92 U. S. 90; *Canard* v. *Louisiana*, 92 U. S. 480; *McMillan* v. *Anderson*, 95 U. S. 37; *Davidson* v. *New Orleans*, 96 U. S. 97; *Missouri* v. *Lewis*, 101 U. S. 92; *Ex parte Wall*, 107 U. S. 265; *Kansas* v. *Ziebold*, 123 U. S. 623; *Eilenbecker* v. *Plymouth Co. Dist. Ct.*, 134 U. S. 31.)

The notice of location of the Pennsylvania claim was absolutely void.   (*Russell* v. *Hoyt*, 4 Mont. 412; *McBurney* v. *Berry*, 5 Mont. 300; *O'Donnell* v. *Glenn*, 8 Mont. 248; *Id.* 9 Mont. 452; *Metcalf* v. *Prescott*, 10 Mont. 283; *McCowan* v. *Maclay*, 16 Mont. 234; Black's Law Dictionary, p. 1226 "void"; Lindley on Mines, Par. 397, and Par. 398; *Moyle* v. *Bullene*, 44 Pac. 69.)   The district court committed no error in excluding from evidence the notice of location of the Pennsylvania claim.   (*Smelting Co.* v. *Kemp*, 104 U. S. 636; *Kahn* v. *Old Telegraph Min. Co.*, 2 Utah, 174; *Champion Min. Co.* v. *C. W. G. Min. Co.*, 75 Cal. 78; *Last Chance Min. Co.* v. *Tyler Min. Co.*, 61 Fed. 567; 20 Am. & Eng. Enc. of Law, p. 726; *Garland* v. *Winn*, 20 How. 8; *Lindsay* v. *Hawes*, 3 Black, 554; *Cornelius* v. *Kessel*, 128 U. S. 456; *Kilbourn* v. *Thompson*, 103 U. S. 168; *Railroad Tax Case*, 8 Sawyer, 274; *Chicago* v. *State*, 134 U. S. 418; *Windsor* v. *McVeigh*, 93 U. S. 274; *McVeigh* v. *U. S.*, 11 Wall. 267; *Bonoker* v. *Evans*, 16 Adolphus & Ellis, N. S. 170; *Calder* v. *Bull*, 3 Dallas, 388; Lindley on Mines, Secs. 539, 630, 637, 632; *In re Am. Hill Quartz Mine*, Sickles' Min. Dec. 377, S. C. Com'rs' Dec. *id.* 384; *Gold Blossom Quartz Mine*, 2 L. D. 767; *Am. Hill Quartz Mine*, 5 Copp's L. O. 114; *Id.*, 6 Copp's L. O. 1; *Aurora Hill. Consol. M. Co.* v. *85 Min. Co.*, 34 Fed. 514; *Deno* v. *Griffin*, 20 Nev. 249; *Alta M. & S. Co.* v. *Benson M. & S. Co.* (Arizona), 16 Pac. 565, 145 U. S. 428; *Deffebach* v. *Hawke*, 115 U. S. 392; Copp's U. S. Min. Lands, 254.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was brought to recover damages for trespass upon a portion of the Johnstown (patented) lode mining claim, situ-

ate in Silver Bow county. In a second cause of action the plaintiff asks that its title be quieted to the premises in controversy, and that defendant be restrained from trespassing *pendente lite,* and, upon final decree, that it be perpetually enjoined from trespassing or asserting any right or title to plaintiff's property. Before the cause was set for trial, the plaintiff was, by leave of court, allowed to dismiss the first cause of action without prejudice. The cause then proceeded as one in equity to determine an adverse claim made by defendant under Section 1310 of the Code of Civil Procedure.

The complaint alleges, in substance, that the plaintiff is, and for a long time has been, the owner and in possession of the portion of the Johnstown described, and of all of the veins, lodes and ledges having their tops or apices therein; that the top or apex of a certain vein, bearing gold, silver and copper, lying within the surface boundaries of the Johnstown lode, extends through the whole length of the claim, and is substantially parallel with the side lines thereof; that it is intersected by the end lines of the claim, which are parallel; that said apex lies within the lines of the part described, and passes through the east and west end lines thereof; that said vein, in its course downward into the earth, so far departs from the perpendicular as to extend beyond the south side line of the Johnstown claim, and of the premises owned by the defendant within the Johnstown, and into and beneath that certain other claim known as the "Pennsylvania," the greater portion of which is claimed by the defendant; that this claim lies partly adjacent to and south of the plaintiff's premises; that plaintiff is the owner and in possession of said vein or ledge, not only to the extent of those parts of it which lie within the vertical planes extending downward through the surface boundaries of the conveyed portion, but also of all portions lying outside of these planes, and between two planes drawn downward, the one through the east end line of the Johnstown claim, and the other through the west end line of the part described, so extended in their own direction, respectively, as to intersect the exterior portion of said vein beneath the surface of the Pennsylvania claim, and north

of a plane extending from the north side line of the said claim at the surface into the earth toward the the south at an angle of 40 degrees below the horizon; that all the ores, minerals and metals lying within said planes are owned by the plaintiff throughout the entire depth of the vein; that the defendant claims an estate or interest adverse to the plaintiff in those parts of the vein lying outside of the plaintiff's surface lines and beneath the Pennsylvania claim; that this claim of the defendant casts a cloud upon plaintiff's title to such exterior parts of said vein, and interferes with the plaintiff's use and enjoyment of its property; that said assertion of interest by the defendant is without right or title; that the plaintiff's title cannot be quieted or adequately protected by one or more actions at law, because numerous suits between the parties, involving the title of the plaintiff to different portions of the vein underlying defendant's surface, will be necessary; that the defendant has entered upon certain portions of the vein beneath the surface of the Pennsylvania claim, has extracted valuable ores therefrom, and is engaged in prosecuting mining developments for the purpose of removing other valuable ores; that said entry is without right and against the wish of plaintiff; that the defendant threatens to continue to enter upon the vein of plaintiff, and to extract, remove, and convert to its own use valuable ores belonging to plaintiff; that plaintiff does not know and cannot ascertain the value of the ores so taken away; and that, if the defendant be not enjoined, the plaintiff will be compelled to resort to a multiplicity of suits to protect its rights, while in the meantime its estate is being wasted and destroyed. The prayer demands that the defendant be required to set forth the nature of its claims; that it be adjudged that defendant has no right or title to any part of the vein or ore bodies in controversy, that the plaintiff's title be quieted, and that defendant be forever enjoined from removing any ores therefrom or asserting any right or title thereto.

The defendant, in its answer, makes the following denials: That the plaintiff is the owner of the veins, lodes or ledges having their tops or apices within the premises described, or is en-

titled to the possession of them throughout their entire depth; that the top or apex of any veins or lodes lies within the Johnstown lode claim, or that the said tops or apices extend through the length of the claim parallel to the side lines, and pass through the end lines thereof; that the top or apex of any of the veins or ledges described lies within the portion of the Johnstown owned by plaintiff, or passes on its strike through the end lines thereof; that, while the vein claimed by defendant so far departs from the perpendicular on its dip as to extend under the Pennsylvania, it passes through the end lines of the claim or the part thereof owned by the plaintiff; that the plaintiff is the owner of the parts of the vein lying outside of the lines of the Johnstown claim, and within the planes described by plaintiff; that the plaintiff is the owner of any vein within the Pennsylvania claim, whether beneath the plane extending into the earth at an angle of 40 degrees below the horizon from the north side line of said claim, or not; that the plaintiff is the owner of any ore bodies beneath said plane; that any claim of the defendant thereto casts a cloud upon plaintiff's title, or restricts the plaintiff's enjoyment thereof; that the claim of the defendant is without right or title; that the right or title of plaintiff cannot be protected by one or two actions at law, or that numerous actions ought to follow between the plaintiff and the defendant touching different portions of the vein or lode of the plaintiff underlying the Pennsylvania claim; that it has, by underground workings or otherwise, entered upon the lode claimed by plaintiff within the Pennsylvania claim, or at all, and extracted valuable ores therefrom, or that it is now engaged in so doing; that the extraction of any ores from said lode by the defendant is against the wishes of the plaintiff, or that the defendant is continuing or threatens to continue to extract ores therefrom and to convert them to its own use, against the wishes of the plaintiff; that, unless the defendant is restrained and enjoined from entering upon said vein and removing ores therefrom, it will continue to do so, to the great or any injury of plaintiff; that the plaintiff cannot ascertain the value of the ores which the defendant is extracting or will extract; and that the plaintiff will

be compelled to bring a multiplicity of suits against defendant in order to protect its property. After asserting that any claim of the plaintiff to the veins and ore bodies in controversy is without right, and that the plane drawn at an angle of 40 degrees below the horizon from the north side line of the Pennsylvania claim would include numerous veins lying south of the vein claimed by plaintiff, because said vein has a much steeper dip than the plane, the answer proceeds to allege affirmatively that a suit brought by defendant against the plaintiff in the circuit court of the United States to determine the rights of the parties to all ores found beneath the surface of the Pennsylvania claim is still pending and undetermined; that the plaintiff herein has appeared in the action; that said action puts in question the title to all ores or ore bodies described in the complaint herein; and that said United States court has acquired jurisdiction of all matters involved in this controversy. It is further alleged that the plaintiff, by claiming the title to all ores beneath a plane descending into the earth at an angle of 40 degrees, is claiming to a boundary plane different from the dip of the vein, and that by reason thereof there is included in plaintiff's claim numerous veins which cannot possibly have their tops or apices in plaintiff's ground.

In an amendment to this answer the defendant admits that the plaintiff was at the beginning of the action in possession of workings within the Pennsylvania ground below the 400-foot level and above the 900-foot level, and avers that it was also in possession of the small triangle of ground in the northeast corner of the claim, but denies that it had possession of any other part or portion of the claim. It further avers that to the south of and above these workings there were other veins and ore bodies, all of which were in the possession of the defendant.

To this amendment plaintiff made reply, reiterating its claim of possession, not only of all the ore bodies exposed in its workings, but throughout the entire depth of the vein on its dip.

At the conclusion of the evidence, the plaintiff, by leave of court, made amendments to the complaint by so changing the language therein as to include all veins having their tops or

apices within the conveyed portion of the Johnstown claim, and passing through one or both of the end lines of the claim. There was added, also, an allegation that plaintiff had title to and possession of the small triangular piece of ground in the northeast corner of the Pennsylvania, and that the defendant was, at the beginning of the action, engaged in committing trespasses upon the plaintiff's ore and ore bodies beneath the surface of this triangular piece of ground, and beneath the surface of the Snow Bird claim and the portion of the Johnstown claim belonging to defendant, to the south of plaintiff's premises. The prayer was amended so as to demand that the decree quiet title to these portions of the vein, as well as to the portions beneath the part of the Pennsylvania claim belonging to the defendant.

Upon the filing of these amendments, the defendant moved the court for a continuance of the cause, upon the ground that new issues were presented, which it was not prepared to meet. The motion was denied, and the defendant required to answer at once. This it did. The amended answer admits ownership in plaintiff of the small portion of the Pennsylvania claim described. The defendant then, besides denying substantially the amended allegations, avers that much of the work done by plaintiff in the Pennsylvania claim has been done upon veins having their tops or apices within the boundaries of that claim, or within the Johnstown claim outside of the plaintiff's premises, and that at the beginning of the action the plaintiff had not the possession of any of the veins or workings within the Pennsylvania or Johnstown claims south of the plaintiff's premises, except by a wrongful entry thereon by underground workings, and by occupying the same against the wishes of defendant. It is further averred that the defendant is the owner and in possession of the Pennsylvania claim, except the portion described, and of the Johnstown claim outside of and to the south of plaintiff's premises, and claims to own the ores beneath the surface of these claims, and also beneath the Snow Bird claim, so far as they lie within veins having their tops or apices within the portion of the Johnstown owned by it.

To these averments the plaintiff made reply, which contains

denials and a reiteration of many of the allegations set forth in the complaint. When the issues were made up, the defendant renewed its motion for a postponement of the case, and offered to file affidavits showing surprise at the court's action. The motion was again denied. Thereupon, after argument, the cause was submitted. Findings were made in favor of the plaintiff, and judgment entered thereon, granting the relief demanded. From the judgment and an order denying a new trial, the defendant has appealed.

To elucidate the pleadings and illustrate the questions at issue, reference may be had to the subjoined diagrams; the one representing the contention of the plaintiff, and the other that of defendant:

The Pennsylvania claim was located on June 18, 1877, and patent issued to the locators on April 9, 1886. The Rarus was located on October 2, 1878, and a patent issued on June 5, 1884. The Johnstown was located on January 4, 1879, and patent issued on November 15, 1884. The portion of the Johnstown indicated by the letters A, B, C, D, E, F, which will hereafter be referred to as the "conveyed portion," belongs to the plaintiff. The plaintiff is also the owner of the Rarus. For some reason not explained in this record, the Rarus patent, though that claim is older than the Johnstown, excluded the part in conflict with the Johnstown. The patentees of the latter therefore acquired title to the part in conflict. The portion in conflict between the Rarus and the Pennsylvania belongs to the plaintiff. The defendant is the owner of the Pennsylvania, except the portion in conflict, and also of the Johnstown, except the conveyed portion. The Pennsylvania and Johnstown were located by the same persons, and the plaintiff and the defendant obtained title from these original locators by mesne conveyances. The triangular portion of the Snow Bird between the Johnstown and the Pennsylvania is not owned by either of the parties. The controversy involves the situation of the apex of the veins in the conveyed portion, and their continuity and identity to the ore bodies found in the workings down to the 900-foot level beneath the surface of the Snow Bird, the northern portion of the Pennsylvania, and the Johnstown south of the conveyed portion. The plaintiff claims that the veins indicated upon diagram 1 dip to the south at an angle of about 70 degrees from the horizon, thus departing into the territory belonging to the defendant; this situation being made apparent from the identity and continuity of the veins from the apex down to the 900-foot level by numerous workings along the vein upon its dip and strike. It claims that it is entitled to these veins on their dip and along the strike between perpendicular planes descending into the earth, one parallel with the east end line of the Johnstown at a point where the veins pass through the south side line of the Johnstown, and the other through the line E, F, extended in its own direction until it meets the west end line of the Johns-

town extended, and thence in the direction of that line.   The defendant's contention is that two of these veins pass on their strike through the north and south side lines of the Johnstown, that plaintiff has no extralateral rights upon them in the direction of the Pennsylvania claim, and that the third or discovery vein has not been sufficiently developed to indicate what plaintiff's rights are.   It also claims that the ore bodies in controversy are found in veins having their tops or apices in the Pennsylvania, and the portion of the Johnstown outside of the conveyed portion, and hence that the plaintiff has no right to them. There is a further contention that, though the identity and continuity of the veins having their tops or apices in the conveyed portion be established as claimed by plaintiff, they unite on their dip with other veins having their tops or apices in the Pennsylvania claim, and belong to the defendant below the point of union, by virtue of the prior location of this claim.   Still another contention is made by the defendant, that there is a fault extending through the country covered by the claims in this controversy ; that it is indicated in the formation of the country by two fault fissures, substantially parallel with each other and with the east end line of the Rarus, as shown on diagram 2 by the word "Fault" over the dark shading, and descending into the earth at an angle of about 50 degrees to the northwest; that this fault, occasioned by geological disturbances in the crust of the earth, was attended by such a movement of the portion between the fissure planes as to cut off the continuity and identity of the veins so that they cannot be followed from the west through the fault; and that the plaintiff's extralateral rights upon the veins do not extend to the ore bodies in controversy, because they are cut off on their dip by the plane of the fault toward the northwest.   This contention will be understood by reference to the diagrams accompanying the opinion of this court in *Anaconda Copper Mining Co.* v. *Heinze,* 27 Mont. 161, 69 Pac. 909.   In those diagrams the position of these fault planes is shown by the heavy lines at the 900 and 1,000-foot levels under the Snow Bird claim on diagram 1, and the vein matter ending under the east fault fissure is shown on diagram

2. The situation contended for by the defendant in this case will be readily understood by supposing diagram 2 reversed, and the vein matter on the west cut off by the fissure on the opposite side of the fault from that shown.

These contentions were made in the evidence. The pleadings do not show upon what the defendant bases its adverse claim, except in the averment that the ore bodies in controversy have their apices in ground belonging to the defendant, and therefore belong to it by virtue of its ownership of the surface under which they are found. That the plaintiff was at the beginning of the action in possession of the conveyed portion of the Johnstown is admitted. It is also practically admitted that it was in the possession of the workings and ore bodies in controversy, but it is averred that such possession was wrongful.

1. The action was brought on May 2, 1898. It was dismissed as to the first cause of action on April 15, 1899. At that time a motion was made by plaintiff asking that a day be set for the hearing. On April 22d the hearing was fixed for May 22d. On the latter date, upon application of the defendant, the hearing was postponed until July 24th. On July 24th an application for postponement was again made by the defendant, which was granted, and the hearing was fixed for August 11th. On July 24th, when the cause was set for trial, the defendant was, upon motion, permitted to amend its answer. On August 11th it submitted a motion asking that the cause be dismissed—First, because the plaintiff had dismissed the legal cause of action instituted to try the question of title and other legal issues involved, and the dismissal of that cause of action should operate as an abatement of the equitable cause of action, the latter being merely ancillary to the former; and, second, because the issues presented in the equitable cause of action are legal issues, and cannot be tried in an equitable action. Four other grounds were embodied in the motion, but they are substantially repetitions of the two stated. This motion, we think, was properly denied.

The first or legal cause of action stated was for damages for ores already extracted and converted by the defendant. This

was wholly independent of the cause of action stated in the second count. It contained only allegations necessary to authorize a recovery for a past trespass, and had the plaintiff gone to trial thereon, and sustained these allegations by a preponderance of the evidence, it would have been entitled to a verdict and judgment for a substantial sum. The second cause of action was designed to obtain a different character of relief, namely, a determination of the adverse claim of the defendant, and an injunction to restrain it from attempting to assert its adverse claim again. It alleges that the plaintiff is the owner, entitled to the possession and in the actual possession of the property,— not only of the surface of the claim and the apex of the vein, but also of the vein on its dip to its farthest depth; that the defendant makes some claim thereto adverse to the plaintiff's right; and that said claim is without foundation. It concludes with a prayer that the defendant be compelled to exhibit its claim, that the court declare it without foundation, and that the defendant be enjoined from ever again asserting it. Section 1310 of the Code of Civil Procedure declares that "an action may be brought by any person against another who claims an estate or interest in real property adverse to him, for the purpose of determining such adverse claim." As a general statement, it is sufficient, under this section, that the plaintiff have an interest in the real estate in controversy, and that the defendant asserts a claim adverse to him. It does not in terms provide for, nor does it contemplate, one or more actions at law by plaintiff to establish his title before he may require the defendant to set forth the nature of his adverse claim, and have it determined in any form of action appropriate to the case. (*Castro* v. *Barry,* 79 Cal. 443, 21 Pac. 946; *Curtis* v. *Sutter,* 15 Cal. 262; *Stark* v. *Starr,* 6 Wallace, 402, 18 L. Ed. 925.) If the plaintiff for any reason refrains from asserting his claim for damages for past trespasses, or abandons it after bringing suit to establish it, the defendant has no cause of complaint. Under the Code of Civil Procedure (Section 460), there is but one form of civil action for the enforcement or protection of private rights or the redress or prevention of private wrongs, and, upon a cause of

action or defense stated, the court will proceed to try the cause as one at law or in equity, upon the issues presented, and grant such relief as the circumstances demand. The fact that in this case the plaintiff concluded to abandon its cause of action for damages furnished no reason why it should be refused such relief as it could demand under the count joined therewith to settle the adverse claim.

This conclusion renders unnecessary a consideration of plaintiff's argument that the defendant waived its right to interpose the motion to dismiss the action by theretofore moving for leave to amend its answer and for the several postponements of the hearing.

2. On the day set for the trial the defendant asked that all the issues in the case as to the identity and continuity of the veins in controversy, and particularly the question of title thereto, be submitted to a jury for a general verdict as in an action at law. This request was denied. Thereupon request was made that the court frame issues of fact involving the same questions, and submit them to the jury for special findings. This request was also denied. It is now urged that the defendant was entitled to a trial by jury, as a matter of right, under the clause of the state constitution (Article III, Sec. 23), declaring that "the right of trial by jury shall be secured to all and remain inviolate," and that the court erred in refusing it. There is thus presented the important question whether, in the class of cases to which this belongs, a trial by jury may be demanded as a matter of right. A correct solution of it requires an investigation of the conditions existing at the time the territorial government was merged in that of the state, for unless by express terms the constitution by the language employed therein, manifests an intention by the convention to extend the right guarantied under this broad declaration to cases wherein it could not theretofore have been demanded as a matter of right, it must be understood as securing such right in this regard only as existed at the time of its adoption. (*State ex rel. Jackson* v. *Kennie*, 24 Mont. 45, 60 Pac. 589, and cases cited; *Finch* v. *Kent*, 24 Mont. 268, 61 Pac. 653.) This rule is elementary. Now, there

is nothing in the constitution manifesting an intention to extend the right to a jury trial to cases wherein it did not theretofore exist. We must therefore assume that, if under the territorial government a jury could have been demanded in this case as a matter of right, it may be demanded now; otherwise it may not.

At the first session of the territorial legislature, in 1864, the following provision was enacted: "An action may be brought by any person in possession, by himself or his tenant of real property, against any person who claims an estate or interest therein adverse to him, for the purpose of determining such adverse claim, estate or interest." Section 233, p. 92, Acts 1864-65. It was adopted from the statute of California of 1851. Upon the adoption of the Code of California in 1872, the section was modified so as to authorize suit whether the plaintiff is in possession or not. The section as enacted by the Montana legislature was preserved in the various compilations of the Code until the formation of the state government (Codified Statutes of 1871-2, page 94, Section 303; Revised Statutes of 1879, page 110, Section 354; Compiled Statutes of 1887, First Division, page 160, Section 366), when it was continued in force by the constitution (Schedule 1). In the Code of 1895, Section 1310, *supra,* was enacted, and the old section repealed. The purpose of the original act was to enlarge the power of courts, and to enable them to entertain actions to quiet title to real estate in the possession of the plaintiff without the necessity of first having the title established by one or more actions at law. Said Field, Chief Justice, after quoting the statute, in *Curtis v. Sutter,* 15 Cal. 260: "This statute enlarges the class of cases in which equitable relief could formerly be sought in the quieting of title. It authorizes the interposition of equity in cases where previously bills of peace would not lie." Then after discussing the nature of bills of peace under the old equity practice, and the curcumstances under which they would lie, he proceeded: "Under the statute of this state, it is unnecessary for the plaintiff to delay seeking the equitable interposition of the court until he has been disturbed in his possession by the institution of a suit against him, and until judgment in such suit

has passed in his favor. It is sufficient if, whilst in the possession of the property, a party out of possession claim an estate or interest adverse to him. He can immediately, upon knowledge of the assertion of such claim, require the nature and character of the adverse estate or interest to be produced, exposed, and judicially determined, and the question of title be thus forever quieted. It does not follow from the fact that the suit is brought in equity that the determination of questions purely of a legal character in relation to the title will necessarily be withdrawn from the ordinary cognizance of a court of law. The court sitting in equity may direct, whenever in its judgment it may become proper, an issue to be framed upon the pleadings and submitted to the jury. Upon the verdict of the jury, if a new trial be not granted, the court will then act, by either dismissing the bill, or by adjudging the adverse estate or interest claimed to be invalid and of no effect, and awarding a perpetual injunction against its assertion to the property in question." Mr. Pomeroy, in discussing the fundamental principles of equity, says: "The exclusive jurisdiction includes, secondly, all civil cases in which the remedy to be granted—and, of course, the remedial right—is purely equitable, or one which is recognized and administered by courts of equity, and not by courts of law. In the cases of this class, the primary right which is maintained, redressed, or enforced is sometimes equitable and is sometimes legal; but the jurisdiction depends, not upon the nature of these rights, estates, or interests, but wholly upon the nature of the remedies." Then, after giving various illustrations of cases in which courts of equity have exclusive jurisdiction, he proceeds: "It is proper to remark here that the statutory legislation of many states has increased the number of cases in which purely equitable remedies are granted for the purpose of maintaining, enforcing, or defending primary rights, estates, and interests which are legal in their nature, and has thus enlarged this department of the original exclusive jurisdiction of equity. As examples, merely, I mention the statutory suit to quiet title and determine the legal estate by the holder of the fee in possession or not in possession, against an

adverse claimant or claimants relying, perhaps, upon another legal title.    *    *    *" (Pomeroy's Equity Jurisprudence, Sec. 138.) It is thus clear that the purpose of the statute was to confer upon courts of equity the power to entertain the action, which theretofore would not lie, and to enable them to ascertain and quiet the title without the intervention of a court at law, for, as is pointed out by Chief Justice Field in *Curtis* v. *Sutter, supra,* the action at law would not be conclusive as to the title, and, the purpose of the action being to prevent disturbance of the possession of the plaintiff and to protect him from future litigation, a court of equity could finally settle the adverse claim, and quiet the title forever. Such has also been the holding by the California court, under the revised section of the statute, where the action has been brought by a person in possession. (*Brandt* v. *Wheaton,* 52 Cal. 430 ; *Polack* v. *Gurnee,* 66 Cal. 266, 5 Pac. 229 ; *Benson* v. *Shotwell,* 87 Cal. 49, 25 Pac. 249 ; *Reynolds* v. *Lincoln,* 71 Cal. 183, 9 Pac. 176, 12 Pac. 449.) "The statutory action to determine an adverse claim is an improvement on the old bill of peace. The statute enlarges the class of cases in which equitable relief could formerly be sought in the quieting of title. It is not necessary, as formerly, that the plaintiff should first establish his right at law." ˙ (*Castro* v. *Barry,* 79 Cal. 446, 21 Pac. 946.) Under the revised form of the statute, different situations may exist as to possession, each calling for a different remedy. The plaintiff may be in possession. The appropriate remedy is a suit in equity to quiet title. If the defendant is in possession, the appropriate remedy would seem to be an action of ejectment at law to try the question of title and right of possession, and a judgment thus obtained against the defendant would be conclusive of the plaintiff's title and right to the possession. It is held, however, that a suit in equity will also lie in this case (*Foree* v. *Stubbs,* 41 Neb. 271, 59 N. W. 798; *Frost* v. *Spitley,* 121 U. S. 552, 7 Sup. Ct. 1129, 30 L. Ed. 1010), provided the plaintiff has a clear legal title. If the property is not occupied, then the suit is one in equity, for there is no form of legal action which could, under such circumstances, be invoked. (*Bigelow* v. *Chatterton,* 51 Fed.

614, 2 C. C. A. 402.)   If a third party is in possession, the defendant claiming adversely may be joined as defendant with the party in possession.   (Code of Civil Procedure, Sec. 582.) In that case the appropriate action would assume the aspect of an action at law in ejectment, which might under some circumstances be joined with a count for equitable relief.

The supreme court of California has not always been consistent with itself in determining whether the particular action was one in equity or at law.   The result of its decisions seems to be that whenever the action is in the nature of ejectment, either upon the allegations contained in the complaint, or the nature of the relief demanded thereon, or when the defendant seeks possession by a counterclaim of that nature, the action is one at law, and either party is entitled to have the legal issues thus raised tried by a jury; otherwise the suit is one of equitable cognizance, and a jury may not be demanded as a matter of strict constitutional right.   The following cases, in addition to those already cited, will be sufficient to illustrate this statement: *Hyde* v. *Redding,* 74 Cal. 493, 16 Pac. 380; *Donahue* v. *Meister,* 88 Cal. 121, 25 Pac. 1096, 22 Am. St. Rep. 283; *Newman* v. *Duane,* 89 Cal. 597, 27 Pac. 66; *Angus* v. *Craven,* 132 Cal. 691, 64 Pac. 1091.

It may be stated, as a general proposition, that it is not an objection to the jurisdiction of a court in equity that legal questions are presented for consideration which might also arise in a court of law.   If the controversy be one in which a court of equity only can afford the relief prayed for, its jurisdiction is unaffected by the questions involved.   (*Holland* v. *Challen,* 110 U. S. 15, 3 Sup. Ct. 495, 28 L. Ed. 52; *Smith v. Bank,* 89 Fed. 832, 32 C. C. A. 368.)   In *Holland* v. *Challen, supra,* in construing a similar statute, the Supreme Court of the United States said: "The statute of Nebraska enlarges the class of cases in which relief was formerly afforded by a court of equity in quieting the title to real property.   It authorizes the institution of legal proceedings not merely in cases where a bill of peace would lie (that is, to establish the title of the plaintiff against numerous parties insisting upon the same right, or to

obtain repose against repeated litigation of an unsuccessful claim by the same party), but also to prevent future litigation respecting the property, by removing existing causes of controversy as to its title, and so embraces cases where a bill *quia timet* to remove a cloud upon the title would lie." In order to maintain a bill of peace under the old practice, it was necessary to allege and show that the legal title had been successfully maintained in one or more actions at law. The ultimate relief sought was protection from future litigation and interference with the plaintiff's possession. The actions at law were not conclusive, and the courts of equity proceeded to *ascertain the title,* and thereupon, when ascertained, to grant the ultimate relief demanded. If it took jurisdiction for any purpose, it took jurisdiction for all purposes, and determined all questions involved, whether legal or equitable, and that, too, without the intervention of a jury, except at the discretion of the chancellor.

We have made the foregoing observations in connection with the authorities cited for the reason that they are cited by counsel and discussed in their briefs, counsel on each side claiming that they support their theory of the law. It would serve no useful purpose to refer to the great number of other cases cited by counsel. We think the question at issue must be decided against the contention of the defendant upon the decisions of this court prior to the adoption of the constitution.

The early case of *Gallagher* v. *Basey,* 1 Mont. 457, was a suit for perpetual injunction to restrain the diversion of water. The action was sustained, though it did not appear that the legal title had ever been tried in an action at law. It was also held that the defendants were not entitled to a trial by jury. The court proceeded upon the theory that, its equity jurisdiction having been invoked for relief by injunction, it could determine the question of title involved in the first instance, though it was directly put in issue, and though it is the rule that a court of equity does not usually interfere in such cases until the title has been established by an action for damages. This case was affirmed by the supreme court of the United States; that court holding that, though the statute of the territory regulating civil

proceedings declared "that an issue of fact shall be tried by a jury unless a jury trial be waived," a court sitting as a court of equity was not bound by the findings of a jury upon the issues submitted at the trial.    (*Basey* v. *Gallagher,* 20 Wallace, 670, 22 L. Ed. 452.)

*Fabian* v. *Collins,* 3 Mont. 215, was another case of the same character, and yet the territorial court expressly held that a trial by jury could not be demanded as a matter of right; citing with approval *Gallagher* v. *Basey, supra,* and *Kleinschmidt* v. *Dunphy,* 1 Mont. 118.

The case of *Wolverton* v. *Nichols,* 5 Mont. 89, 2 Pac. 308, was an action to determine an adverse claim to a mine, in pursuance of the provisions of Section 2326 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 1430).    The supreme court held that the action was one in equity to quiet title under Section 354 of the Revised Statutes, and should be so treated.    It was also held that in order to maintain the action the plaintiff must allege and prove his possession; otherwise he should proceed in ejectment.

*Milligan* v. *Savery,* 6 Mont. 129, 9 Pac. 894, was an action of the same character; and although the case went off upon a motion for nonsuit, as did also *Wolverton* v. *Nichols, supra,* the latter case was cited, and the conclusions therein announced were approved.

The case of *Mantle* v. *Noyes,* 5 Mont. 274, 5 Pac. 856, was an action under the statute to determine conflicting claims to real estate between the patentees of a placer mine and the locators of a quartz lode.    The fundamental question at issue, as in the other cases cited, was the legal title to the property in controversy; and yet it was expressly decided that the issue of fact presented was to be finally determined by the court, and that a jury could not, as a matter of right, be demanded by either of the parties; and the case of *Gallagher* v. *Basey, supra,* was considered at some length, and expressly approved.

*Garfield M. & M. Co.* v. *Hammer,* 6 Mont. 53, 8 Pac. 153, was another case involving adverse claims to mining ground under the statute.    The question of the right of trial by jury

does not seem to have been agitated, but in speaking of the nature of the action the court used this language: "Now, although the courts of this territory, in determining the title to mining claims, where there is a dispute in relation thereto in the land office, have adopted the forms of action by which title to land is tried, which may be either by the action of ejectment or to quiet title, yet the real question to be determined is, who is entitled to the patent from the United States government to the mining claim in controversy, or, in other words, who has become the purchaser of the mining claim, and devested the title of the government thereto, by complying with the requirements of the law of congress relative to acquiring title to mineral lands?"

In all these cases the main issue involved was the question of legal title, and yet the court proceeded as in equity, and not at law, and determined it without the aid of a jury, or, if a jury was called, its findings were regarded as advisory only.

This was the condition of the law on this subject at the time the constitution was devised by the convention and adopted by the people. Since that time all of these cases have been repeatedly cited and approved. (*Sklower* v. *Abbott,* 19 Mont. 228, 47 Pac. 901; *Murray* v. *Polglase,* 23 Mont. 413, 59 Pac. 439.) Is it not reasonable to presume that the members of the convention used the language referred to with knowledge of these decisions, and that it was deemed wise not to overturn them? Either this presumption must prevail, or this court must proceed to overturn them upon the presumption that the members of the convention did not inform themselves as to the condition of the law as declared in these cases, and intended something beyond what the language used by them in the constitution expresses. The subject is one of no little difficulty. But for these cases, we should hold that the right of trial by jury extends to all cases wherein the legal title or right of possession is at issue.

The revised form of the statute, so far as concerns cases of the class to which the present one belongs, embodies the same principle as the original section. The cases decided under the

latter are entirely applicable to those of the same kind arising under the former.

The plaintiff alleged title and possession in itself. The court found the allegation true. Indeed, title to the surface of the conveyed portion and of the Rarus and to the apex of the veins is admitted, as is also the possession of the ore bodies in controversy. An effort was made to show that the possession of the latter is wrongful, and therefore does not rest upon the legal title, by evidence that two of the veins are so situated with reference to the end lines of the Johnstown claim that extralateral rights in the direction of defendant's ground cannot be asserted, and that development of the third is not sufficient to demonstrate its continuity and identity from the apex to the point in dispute. An attempt was also made to show that, even if plaintiff has extralateral rights in the direction of defendant's premises, defendant is entitled to all of the veins below a certain point, by reason of a union of them with certain veins having their tops or apices within the Pennsylvania claim; it being older in the date of its location than the Johnstown claim. Of course, if the theory of the defendant had prevailed, the action should have been dismissed. As it did not, the result must necessarily follow that the plaintiff has the title and lawful possession of the veins on the dip and strike, and is entitled to the relief demanded, notwithstanding the *prima facie* presumption in favor of defendant's title to everything beneath its surface. This presumption was overturned and destroyed as soon as the identity and continuity of the plaintiff's veins from their apices to the point in controversy was established; it being made to appear, also, that plaintiff had a right to follow them on their dip. These conflicting rights, dependent upon the physical and geological facts found upon an inspection of the surface and underground workings, are similar in their nature to those tried and determined in actions to determine adverse claims to surface rights, and are governed by the same principles.

Our conclusion, therefore, is that the court committed no error in denying a trial by jury.

3. The point is made that the evidence is not sufficient to

sustain the findings as to the situation of the veins, and their continuity and identity on their descent into the earth. The evidence is conflicting upon all the issues involved. The findings of the trial court thereon are conclusive upon this court, and will not be disturbed.

4. Many errors are assigned upon the admission and exclusion of evidence. We have given patient attention to them all. We do not think any error complained of in this regard of sufficient importance to warrant a reversal of the judgment or order. It would be impossible for a court to try such a cause, consuming, as this did, 55 days in hearing evidence covering nearly 6,000 printed pages, without allowing some errors and irregularities to intervene. None of the rulings complained of were prejudicial. The evidence which was excluded was either subsequently admitted, or was of such character that it could not have affected the result. In every instance that which was admitted was competent and material for the purpose for which it was offered. We shall notice specially but one of the numerous rulings complained of. The defendant offered in evidence the notice of location of the Pennsylvania claim, in connection with the mesne conveyances before patent from the original locators to the defendant, all of which were excluded. This evidence was offered in support of the defendant's theory that this claim was located before the Johnstown or the Rarus claims, and that there are veins having their apices within the Pennsylvania claim which in their descent into the earth unite with those having their apices in the Rarus and Johnstown claims; thus giving defendant title to the whole vein below the point of union. The evidence was all excluded on the ground that the notice was not verified as required by the statute of the territory of Montana in force at the time the location was made. Counsel for the defendant contend that this ruling was erroneous, for the reason that it excluded all evidence as to the date to which the patent relates, and also for the reason that the statute requiring the notice to be verified was in contravention of the organic law of the territory, prohibiting legislation by the territorial government "interfering with the primary disposal of the soil."

Conceding the ruling to have been erroneous for either or both reasons, yet no prejudice was done, for the reason that the court found from the evidence that no such veins existed as claimed by defendant. The evidence became material only in connection with other evidence tending to establish the existence of such veins having their apices in defendant's ground as could unite with those having their apices in plaintiff's ground. If none such existed, the relative dates of the location of the claims in controversy was not a material inquiry; it being apparent that defendant had introduced all the evidence it had upon this point, or had an opportunity to do so.

5. Defendant argues that the court erred in refusing a postponement of the trial because of the amendments made to the complaint at the close of the evidence, and because the case was not then reopened for the introduction of other evidence by defendant in support of its various contentions. Upon the theory that the amendments presented no issues other than those tried in the evidence, it was in the discretion of the court to permit the pleadings to be amended as it did, and to deny the motion for a postponement. (*Palmer* v. *McMasters,* 6 Mont. 169, 9 Pac. 898; *Ramsey* v. *Cortland Cattle Co.,* 6 Mont. 498, 13 Pac. 247; *Hartley* v. *Preston,* 2 Mont. 415.) This discretion extends to the allowance of amendments, even after verdict and judgment, to make the pleadings correspond with the proof. (*Wormall* v. *Reins,* 1 Mont. 627; *Randall* v. *Greenhood,* 3 Mont. 506.) We have in the statement set forth the pleadings in full, together with the contentions made in the evidence. It is clear from an inspection of them that no new issues were presented by the amendments. The situation of the veins in the ground of both parties, both with reference to the boundary lines of all the claims, including the Rarus and the Snow Bird, and their dip and strike, with the geological formations and physical conditions found beneath the surface, were fully agitated by the parties. Many expert witnesses were examined, who had spent much time in studying the workings in all of these claims in order that they might be able to testify intelligently. It does not appear from affidavits filed at the time the

ruling was made, or in connection with the motion for a new trial, that the defendant had other evidence which it could have presented, had the ruling been different.  Under these circumstances, we think the amendments were properly allowed, and that there was no error in denying the postponement asked, in order that additional evidence might be furnished.

6.  The court, having found that the portions of the vein in controversy belong to the plaintiff by virtue of its extralateral rights, fixed in the decree the perpendicular planes limiting these rights along the strike.  Toward the east the limit was fixed at a plane passing through the point where the veins depart from the conveyed portion through the south side line, 294 feet west of the east end line of the Johnstown, and parallel with it.  Toward the west the limit was fixed at a plane passing in the direction of the line E, F, until it meets the plane of the west end line of the Johnstown, and thence in the direction of that line extended.  The theory upon which the latter plane was thus fixed was that the owners of the Johnstown, in fixing the end lines of the surface boundaries of the conveyed portion as they did, thus indicated their intention to convey to the plaintiff all the veins on their dip in the same direction, and that, having subsequently conveyed to the defendant the remainder of the surface of the claim, it obtained only such portion of the veins as was not previously conveyed.  The defendant contends that the deeds under which the plaintiff obtained title do not convey any extralateral rights at all, or, if they do, that such rights should be limited toward the west by planes parallel with the end lines of the Johnstown, passing through the points where the different veins pass through the end line E, F, and extended indefinitely to the south in the direction of the dotted lines L, M, and F, N.

The deeds in question are one executed by the patentees to the plaintiff's grantors on March 7, 1883, and the deed to the plaintiff from his immediate grantor on January 13, 1897.  The former grants all the right, title, and interest of the grantors "to that certain portion, claim, and mining right, title, and property, on that certain ledge, vein, lode, or deposit of quartz and

other rock in place, containing precious metals of gold, silver, and other metals, and situated in the Summit Valley mining district, county of Silver Bow, and territory of Montana, and described as follows, to-wit." Then follows a description by metes and bounds of the conveyed portion, after which the deeds continue: "All right, title, and interest that is now possessed, together with any that may hereafter accrue, through application No. 1,265 made to the U. S. government by the grantors herein for a patent for lot No. 173, together with all the dips, spurs, and angles, and also all the metals, ores, gold, silver, and metal bearing quartz, rock, and earth therein, and all the rights, privileges and franchises thereto incident, appendant, and appurtenant, or therewith usually had and enjoyed." The latter grants to the plaintiff all the right, title, and interest and estate of the grantor in "all that portion of the Johnstown quartz lode mining claim, designated as lot number one hundred seventy-three (173) in township three (3) north, range seven (7) west, and which is particularly bounded and described as follows, to-wit." Then follows a description of the conveyed portion by metes and bounds, referred to in the former deed. All reference to metals, ores, quartz-bearing rock, etc., is omitted.

In determining the effect of these conveyances, regard must be had not only to the terms employed in them and the surrounding circumstances, but also to the character of the property granted. An ordinary conveyance of agricultural land or of town lots describes the subject of the grant merely by metes and bounds, as so much of the earth's surface. Yet, without specific mention, the grant includes the right of support from the lands adjacent thereto, as well as everything above and beneath the surface, unless, by apposite words contained in it, some reservation is made. These rights, conveyed without specific description, are not mere incidents, but are substantive parts of that which is described, to the extent that without them the subject of the grant is not susceptible of its appropriate use and enjoyment; in other words, the rights conveyed extend far beyond the specific words of description contained in the deed. Now, a patent from the United States to a quartz claim con-

veys· everything which is granted by an ordinary conveyance between private parties, and in many cases much more. If the conditions of the law have been observed, it conveys, in addition to what is found beneath the surface described therein, all the veins, to their utmost depths, the tops or apices of which are found within the surface granted, though they so far depart from the perpendicular in their descent into the earth as to extend outside of the vertical side lines of such surface. As, in a conveyance of agricultural lands or town lots, everything is presumed to be granted which is necessary to the enjoyment of the species of property, without specific description, so by a deed to a quartz claim, or a definite portion thereof, as such, everything necessary to the proper and full enjoyment of that species of property will be presumed to have been conveyed, unless there be employed specific words showing the intention of the grantor to make some reservation. Extralateral rights are not a mere incident or appurtenance, but a substantial part of the property itself which is the subject of the grant. They are not susceptible. of a more definite description than that contained in the statute, which the patent follows, because the conditions beneath the surface cannot be ascertained prior to the issuance of patent; but we apprehend that they would pass from the government to the grantee under a patent to a quartz claim, as such, by virtue of the provisions of the statute, even though the patent contained no express reference to them whatever. In the first deed mentioned, it was evidently the intention of the grantors to grant no less a right than they would themselves obtain under the patent which they had applied for, because the language expressly says so. They were conveying a portion of the Johnstown claim, including a definite, fixed portion of the apex of the vein along its strike. They must therefore be conclusively presumed, in the absence of words of express reservation, to have intended to convey whatever other substantial property rights were attached to such portion of the apex. The immediate grantor of the plaintiff therefore obtained all the rights which he would have obtained by a patent directly to himself. The second deed omits any reference to the veins, or the dips,

spurs, and angles thereof, but it is apparent therefrom that the parties were dealing with the property as quartz mining property,—that is, as a definite portion of the "Johnstown quartz lode mining claim;" and, from what has already been said, the presumption must obtain that the grantor intended to part with all his right, title, interest, and estate therein, of whatever character and description. Hence the inevitable conclusion that the plaintiff is vested with the rights obtained by the patentees of the Johnstown claim, and have such rights upon the veins extralaterally, as belong to the apex embraced within the end lines of the conveyed portion.

The fact that the end lines of the conveyed portion were fixed as they were does not, standing alone, justify the conclusion that the grantors of the plaintiff intended thereby to limit or control in any way the extralateral rights as between the grantees of the different portions of the claim.

Plaintiff cites in support of the decree the case of *Boston & M. Consol. Copper & Silver Min. Co.* v. *Montana Ore Purchasing Co.* (C. C.), 89 Fed. 529. In that case the deed of March 7, 1883, was considered by Judge De Haven, and the conclusion reached by him is in accord with the plaintiff's contention. We do not approve the conclusion reached by Judge De Haven. It is founded mainly upon the case of *Stinchfield* v. *Gillis,* 107 Cal. 86, 40 Pac. 98. In that case it is said, in part, that "if the proprietor of a tract of mining ground, which has been derived through several locations, should dispose of the same in parcels, irrespective of the lines of such locations, the rights of his grantees would be measured by the terms of their deeds." The question in the case before us does not seem to have been definitely presented for decision by the facts, and what was said therein was apparently *obiter*.

In *Richmond Min. Co.* v. *Eureka Min. Co.,* 103 U. S. 839, 26 L. Ed. 557, also cited by Judge De Haven, the point, though adverted to, was not decided; the facts showing that the plane of the division line agreed upon between the owners of the adjacent mines was understood, at the time the agreement was made, to extend downward toward the center of the earth. This

court commented somewhat upon the decision of Judge De Haven in the *Lexington Case,* 23 Mont. 177, 58 Pac. 111, 75 Am. St. Rep. 505, and expressed the opinion that it is not sustained by the cases cited. We concede the proposition that the parties may, by express or implied agreement, fix such boundaries for themselves as they choose, and, further, that conveyances of patented mining property by private parties are not controlled by any provision of the United States mining laws. We think, nevertheless, that in the absence of some express agreement, or one strongly implied from the circumstances, surface boundary lines should not be held controlling.

There is nothing in this record to indicate that, at the time the first deed was made, either of the parties knew the direction of the dip of the veins; nor is there any presumption that they had such knowledge. If it be true that they did not, what intention could they have entertained with reference to it? If the dip had subsequently been found to be to the north, then, according to plaintiff's view, its rights would have been of little value, because they would have been cut off entirely by the line E, F, extended toward the north a short distance beyond the north line of the Johnstown. The possibilities of the situation will be realized if we suppose all the veins to pass through the line F, A.

In the absence of any agreement, express or implied, we think the character of the property should control, and that only such extralateral rights are conveyed as appertain to the portion of the apex embraced within the boundaries of the conveyed portion, bounded by planes parallel with the end lines of the claim as patented. This theory seems to us to be entirely just, and at the same time to avoid the result that would follow from the view contended for by the plaintiff; that is, that the extralateral rights conveyed are left to depend entirely upon the subsequent ascertainment of the direction of the dip.

A suggestion was made during argument that the west end line of the conveyed portion was fixed parallel with the east end line of the Rarus in a compromise arrangement in the settlement of the conflict between the Rarus and the Johnstown, and

for this reason the decree is correct in fixing the west end line of the conveyed portion as the proper direction of plaintiff's extralateral rights. There is nothing in the record to support the conclusion that such a compromise was ever made, except the fact that the west end line of the conveyed portion is apparently parallel with the east end line of the Rarus. Even if it were true, however, that such a compromise was made, the result would be that *both* end lines limiting the extralateral rights would take their direction from the east end line of the Rarus, and not from that of the Johnstown.

In our opinion, the decree should be modified so as to fix the west end planes in the direction of the line L, M, at the points where the different veins pass through the line E, F; the plaintiff conceding that this is proper, if, upon a construction of the deeds, this court concludes that the trial court erred in fixing the west end plane in the direction of the line E, F.

We do not understand that the court below undertook to adjudge any rights as between the plaintiff and the owners of the ground to the east of the Pennsylvania claim. The decree has not, nor could it have, anything to do with conflicting rights beneath the Michael Devitt claim, because they are not within the issues in this case. The line fixed as to the direction of the boundary plane to the east was intended merely to give the direction of plaintiff's rights beneath the surface covered by the Pennsylvania claim, and nothing more.

7. In the judgment entered by the lower court, the costs of the action were awarded to the plaintiff. In the bill or memorandum filed by plaintiff under the requirements of Section 1867 of the Code of Civil Procedure, there were contained items, claimed as necessary disbursements, amounting in the aggregate to $324,134.68. The defendant moved the court, under the provisions of that section, to tax the bill; objecting to many of the items claimed as illegal. After a hearing the court made an order disallowing a portion of the bill, and directing judgment for the balance, amounting to $265,015.58. Complaint is made that four of the items so charged, to-wit, for surveys done in preparation for trial, $1,166.66; necessary ex-

penses for stenographer and copies, $1,050.80; necessary models used, $3,424.41; and for development work done in preparation for trial, and for mining supplies, $258,373.01,—were not taxable as costs, and should have been disallowed. We think this contention is just. Costs, as costs, were not recoverable at the common law. (*Hibbard* v. *Tomlinson,* 2 Mont. 220; *Orr* v. *Haskell, Id.* 350.) Under the rule which has always prevailed in this jurisdiction, no costs can be allowed either party, except such as are provided for by statute. Under this rule, we must look to the statute in order to determine whether the items in question are chargeable.

Section 1866 of the Code of Civil Procedure declares: "A party to whom costs are awarded in an action is entitled to include in his bill of costs, his necessary disbursements as follows: The legal fees of witnesses, including mileage, of referees and other officers; the expenses of taking depositions; the legal fees for publication when publication is directed; the legal fees paid for filing and recording papers and certified copies thereof necessarily used in the action or on the trial; the legal fees paid stenographers for per diem or for copies; the reasonable expenses of printing papers for a hearing when required by a rule of court; the reasonable expenses of making transcript for the supreme court; the reasonable expenses for making a map or maps if required and necessary to be used on trial or hearing; and such other reasonable and necessary expenses as are taxable according to the course and practice of the court, or by express provision of law." Such items as those charged for models, for surveys, and for development work done in preparation for trial are not specifically mentioned among those enumerated in this section. They are therefore not taxable, unless they fall within the purview of the last clause, allowing "such other reasonable and necessary expenses as are taxable according to the course and practice of the court, or by express provision of law." Evidence was introduced at the hearing touching the course and practice of courts in this connection. None of this, however, justifies the conclusion that it has become, by positive rule or custom, the course and practice of the court in the Second dis-

trict, or in any other district in this state, to tax any such items; nor has our attention been called to any express provision of law on the subject. The courts may establish their own course and practice by rules not inconsistent with law. (Code of Civil Procedure, Secs. 111, 112.) If reasonable in their requirements, and uniform in application, they have the same force as a statute. A rule touching the costs referred to in the last clause of the statute *supra,* so far as they are not governed by other express provisions of law, would perhaps fall within the purview of this power. Until such rule has been established, or until by custom it has become the rule to allow them, they cannot be taxed.

But it is said by counsel for the plaintiff that all of these disbursements were necessary, and should be allowed, at the discretion of the court, under a liberal construction of the section of the statute quoted. The argument based upon necessity might with propriety be addressed to the legislative branch of the government. Courts, however, are bound by the statute, no matter what may be the necessities of the case, and may not go beyond its express provisions. It may be within the power of the legislature to lodge the whole matter of costs in the discretion of the courts, but until it does so they have no discretion in adjudging them, except in the class of cases mentioned in Sections 1853 and 1855 of the Code of Civil Procedure, among which the present case does not fall.

It is also said that the models used at the trial to illustrate the evidence and contentions of the parties are in fact maps, and the necessaray expenses of preparing them should be allowed as for maps "required and necessary to be used on the trial of the hearing." A map is a drawing upon a plane surface representing a part of the earth's surface, and the relative position of objects thereon. It may also be so drawn, as was the case here, to show the geological structure and other physical facts necessary to a complete understanding of the matter at issue. A model is a fac simile in three dimensions,—a reproduction in miniature of the object under investigation. The one in controversy here is a miniature reproduction in three

dimensions of the underground workings of defendant's mine, showing the shafts, tunnels, drifts, cross-cuts, etc., in all their details. From its very nature it does not fall within any definition of the word "map," and it is a misapplication of the term to call it a map, though it may far better serve the purpose in hand.

For some reason not explained, the official stenographer did not attend the trial, and by agreement each party employed its own stenographer to report the evidence. This was done by consent of the court, and both of the stenographers thus employed took the oath required by law of official stenographers. The item charged for expenses for stenographer and copies is made up of per diem paid by the plaintiff to its own employe, and for copies of the evidence furnished by him to the plaintiff's counsel from day to day to aid them in the examination of witnesses. It is contended by counsel for plaintiff that this item is properly chargeable under the head of "legal fees paid stenographers for per diem or for copies." The per diem referred to, however, is the legal fee paid by each party at the beginning of the trial, under Section 374 of the Code of Civil Procedure, and the copies mentioned are such as are provided for in Section 373, to be used in the preparation of bills of exception or statements on motion for a new trial. Legal fees are such as are fixed by law, and there is no requirement of law to pay stenographer's fees, except in the section cited, fixing fees to be paid to official stenographers appointed by the court under authority of Section 370. All items complained of must therefore be disallowed.

In order to present the matter of costs to this court, the defendant reserved its exceptions to the order taxing costs, and made the bill embodying them a part of the record on appeal from the judgment. It also took an independent appeal from the order taxing costs. The questions involved are properly reviewable on the appeal from the judgment. An appeal does not lie from the order. (*Murray* v. *Northern Pacific Railway Co.,* 26 Mont. 268, 67 Pac. 625.) The appeal from this order is therefore dismissed.

The order denying a new trial is affirmed.    The cause is remanded, with directions that the court below modify the decree by disallowing the items of costs complained of, and by limiting the extent of the plaintiff's extralateral rights toward the west by fixing the west boundary planes in the direction of the line L, M, as indicated on diagram 1, at the points where the different veins pass through the line E, F.    When so modified, the decree will be affirmed.    The defendant will recover one-half of the costs of appeal.

*Modified and Affirmed.*

MR. JUSTICE MILBURN: I concur in the opinion of the Chief Justice, and in the conclusions reached and stated by him.    As to the matter of the right of trial by jury, I am, as he is, of the opinion that, when the constitution was framed and adopted, the framers thereof and the people were supposed to know what the then right of trial by jury was, and the provision of the instrument referred to was adopted with its meaning to be understood in the light of the law as to the right of trial by jury as adjudicated at the time of such adoption.    Nothing in the opinion or conclusions of the Chief Justice should be understood as invading the right of the people to trial by jury as they had it at the time of the adoption of the constitution, and this case may be only a precedent as to what the law affecting such right shall be under circumstances similar to those appearing in the record of the appeal now here decided.

MR. JUSTICE PIGOTT: Trial by jury of the legal title to the ore bodies in controversy was, as I believe, a matter of right. For this reason I dissent from the conclusion announced in paragraph numbered 2 of the foregoing opinion, and shall, if other duties permit, hereafter express my views upon the subject. With this very important exception, I agree with the results reached upon the other questions considered in the opinion.

Rehearing granted February 3, 1903.